**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David Tannehill CLARK,**
**Defendant–Appellant.**

No. 92–5367.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 2, 1992.

Decided Feb. 11, 1993.

Paul Warren Mengel, III, Murphy, McGettigan & West, P.C., Alexandria, VA, argued (Gregory Lynn Murphy, on the brief), for defendant-appellant.

Evelyn Soon–Soon Ying, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, argued (Vicki D. O'Meara, Acting Asst. Atty. Gen., Robert L. Klarquist, Rebecca A. Lloyd, John L. Smeltzer, John T. Webb, John Alan Bryson, Washington, DC; Richard Cullen, U.S. Atty., Alexandria, VA; Robin Leport, Office of the Sol., Dept. of the Interior, Newton Corner, MA, on the brief), for plaintiff-appellee.

Before RUSSELL and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

BUTZNER, Senior Circuit Judge:

David Tannehill Clark was convicted of offering for sale a Siberian tiger skin rug in interstate and foreign commerce and of selling a Bengal tiger skin rug in interstate commerce in violation of a provision of the Endangered Species Act. *See* 16 U.S.C. § 1538(a)(1)(F). He was sentenced to one year of supervised probation, six months of home detention, and five hundred hours of community service. The court stayed execution of the sentence pending this appeal. We affirm.

## I

Clark, a Virginia resident, advertised a Siberian tiger skin rug for sale in the *Washington Post.* Other advertisements in several national newspapers did not specify the kind of tiger. After reading one of Clark's general advertisements in an Atlanta newspaper, Babur Rathurs, a resident of Georgia, contacted Clark about purchasing a rug. Clark sent Rathurs photos of two Bengal skins and a letter describing one of them. Over the telephone, Clark and Rathurs negotiated a price of $6,000 for a Bengal skin rug. Rathurs wired his sister, Evelyn Adams, who lived near Clark, $6,000 to pay Clark.

When Clark insisted that payment be made in cash at his home, Adams contacted the United States Fish and Wildlife Service. Agent Alan C. Hundley of the service informed Adams that the transaction was illegal and set up an undercover operation through her. Hundley accompanied Adams to Clark's home in the guise of a taxidermist offering general advice. Unknown to Clark, Hundley audiotaped the entire transaction.

During their conversation, Clark told Adams not to worry about the legality of the transaction. He informed her that the law allowed the sale because the Bengal tiger was killed and imported before 1962 and that he had a letter from a taxidermist certifying the history of the tiger skin. Adams paid $6,000 to Clark and obtained a receipt bearing Rathur's name. Clark knew that Rathur, who lived in Atlanta, was the purchaser of the rug.

After the sale, Clark and Hundley discussed a Siberian tiger rug that Clark possessed. Clark told Hundley that he was trying to get $15,000 for the Siberian rug but that he was having difficulty finding a buyer of sufficient wealth. He justified the high price for the Siberian tiger skin on the grounds that it is "extremely rare, because there are very few ... in the wild." Clark also said that he had a potential buyer coming to look at the Siberian rug.

Clark invited Hundley upstairs to examine the ears of the Siberian skin. Hundley again inquired into Clark's anticipated sales price for the rug. Clark stated that he thought the rug was worth at least twice the value of the Bengal and that $15,000 was a "good price." He again mentioned the potential buyer, a foreigner who was going to look at the rug while he was in the country. Hundley then identified himself, arrested Clark, and seized the two rugs.

The government filed an information charging that Clark did "knowingly, intentionally, and unlawfully sell and offer for sale endangered species, to wit, a Bengal tiger skin ... in interstate commerce between the Eastern District of Virginia and Georgia." Another count charged that Clark did "knowingly, intentionally, and unlawfully offer for sale endangered species, to wit, a Siberian tiger skin, in interstate and foreign commerce." The magistrate

judge, hearing the case by consent without a jury, found Clark guilty on both counts for violating 16 U.S.C. § 1538(a)(1)(F).

The magistrate judge increased Clark's base offense level by four points to reflect the combined value of the rugs. Pursuant to 18 U.S.C. § 3402, Clark appealed to the district court, which affirmed.

## II

■ Clark claims that the evidence was insufficient to support his conviction for offering the Siberian tiger skin rug for sale in interstate commerce.

■ Upon review, we consider the evidence in the light most favorable to the government. If, from the evidence as seen in this light, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction will stand. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The Act speaks in clear and precise terms:

> Except as provided in section 1535(g)(2) and 1539 of this title, with respect to any endangered species of fish or wildlife listed pursuant to section 1533 of this title it is unlawful for any person subject to the jurisdiction of the United States to—
>
> \*    \*    \*    \*    \*    \*
>
> (F) sell or offer for sale in interstate or foreign commerce any such species.

16 U.S.C. § 1538(a)(1)(F); *see also* 50 C.F.R. § 17.21(f). The Act defines wildlife to include members of the animal kingdom and their dead bodies or parts. 16 U.S.C. § 1532(8). The tiger, pantheris tigris, has been listed pursuant to section 1533 as an endangered species of wildlife since 1972. *See* 50 C.F.R. § 17.11; 50 Fed.Reg. 6476 (1972).

None of the statutory exceptions applies to Clark. Section 1535(g)(2) allows the "taking" of some species of endangered wildlife within a state if that state's laws permit the activity and the state has a cooperative agreement with the federal government. Section 1539 authorizes the Secretary of the Interior to issue permits and grant exemptions for certain specified purposes. Clark did not act pursuant to a permit or to an exemption specified in this section.

Section 1538(b)(1) allows the import and export of wildlife held in captivity or a controlled environment before December 23, 1973, or the date on which the species was added to the endangered species list, only if "such holding and any subsequent holding or use ... was not in the course of commercial activity." Because Clark's dealing in pre-Act skins was in the course of commercial activity, this section afforded him no defense.

As the district court pointed out, Clark's advertisement in the *Washington Post* and his statements about a potential foreign buyer sufficiently supported the charge that Clark offered the Siberian tiger skin rug for sale in interstate or foreign commerce.

## III

■ Clark next asserts that the magistrate judge erred when he admitted into evidence the tape recording made by Hundley and the transcript of that recording. He contends that the government's failure to lay a foundation consistent with the requirements of *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir.1974), renders the tape recording inadmissible.

Contrary to Clark's contention, the government was not required to meet each of the *McMillan* guidelines. Those factors, while helpful, merely "provide guidance to the district court when called upon to make rulings on authentication issues." *United States v. Branch*, 970 F.2d 1368, 1372 (4th Cir.1992). In *McMillan*, the court did not require strict compliance with the guidelines, and it admitted a tape because its substance and the circumstances under which it was obtained were sufficient proof of its reliability. *McMillan*, 508 F.2d at 104–05.

We review the admission of the recording and transcript for abuse of discretion. *Branch*, 970 F.2d at 1372; *United States v.*

*Collazo,* 732 F.2d 1200, 1203 (4th Cir.1984). Upon review, we will "not find error unless the foundation for admission is 'clearly insufficient to insure the accuracy of the recording.'" *Branch,* 970 at 1372 (quoting *United States v. Jones,* 730 F.2d 593, 597 (10th Cir.1984)).

Hundley testified that he recorded the conversation between himself, Clark, and Adams. He stated that he was present during the entire transaction and did not leave the room while Clark spoke with Adams. Hundley also testified that after he arrested Clark, he took the tape to a FBI laboratory to be duplicated. He listened to the copy and confirmed that it accurately recorded the conversation at Clark's home. Clark had a copy of the tape before trial as well as the opportunity to cross-examine Hundley at trial. The foundation laid by the government was sufficient to admit the tape recording into evidence.

■ The court did not abuse its discretion when it admitted the transcript of the recording, even though Clark's counsel did not stipulate as to its accuracy. *See Collazo,* 732 F.2d at 1203. Hundley testified that he compared the transcript with the recording and concluded that the transcript fairly and accurately reflected the recording. Hundley volunteered that some unclear words on the tape were not transcribed. Clark had the opportunity to explore this issue fully on cross-examination, and he disclosed nothing to dispute the government's evidence that the transcript accurately reproduced the material portions of the tape. *See Collazo,* 732 F.2d at 1203–04.

## IV

■ Clark also defends on the theory of estoppel by entrapment. Clark argues that he relied on government statements to other members of the public that the Act allowed the sale of wildlife killed before the Act went into effect. But for these statements, Clark contends, he would not have sold the skins.

■ The defense of entrapment by estoppel is available when a government official tells the defendant that certain activity is legal, the defendant commits the activity in reasonable reliance on that advice, and prosecution for the conduct would be unfair. *See Cox v. Louisiana,* 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487 (1965); *United States v. Smith,* 940 F.2d 710, 715 (1st Cir.1991).

Clark alleges that he reasonably relied on the statements of three people to conclude that the sales of the Bengal and Siberian rugs were legal because they were made from skins of animals that were killed before passage of the Act. First, Clark contacted the American Museum of Natural History in New York in connection with his purchase of the Siberian tiger skin in 1980. He planned to buy the skin only if it could be made into a rug and wanted the name of a taxidermist who could verify that this could be done. Without informing Clark that interstate and foreign sales of pre-Act skins were illegal, the museum official gave Clark the name of a taxidermist. From this action, Clark inferred that interstate sales of pre-Act wildlife were legal.

The museum official furnished a reference to a taxidermist. He gave no advice that Clark could sell or offer to sell a tiger skin in interstate or foreign commerce. Clark cannot rely on this information to show estoppel.

Second, Clark relied upon the taxidermist who worked on the Siberian skin. He told Clark that he did not like to work on tigers but that it would be "no problem" to work on a pre-Act tiger. Again, Clark inferred from this statement that interstate and foreign sales of pre-Act wildlife were legal.

■ The taxidermist's observation was not an assurance that Clark legally could sell or offer to sell pre-Act skins. More importantly, statements made by a person who is not a federal government official cannot establish the defense of entrapment by estoppel. *See, e.g., United States v. Austin,* 915 F.2d 363, 366 (8th Cir.1990).

Finally, Clark alleges he relied on advice from a former Assistant Secretary of Interior for Fish, Wildlife and Parks, who often

**70**

responded to inquiries about the Act while in office. During his tenure, he believed that some sales of pre-Act wildlife were legal. Clark does not claim that he ever spoke to the former official. He contends that the former official when in office told one of Clark's associates that the sales were allowed.

The evidence fails to show that the former official ever assured the associate that interstate and foreign sales of pre-Act tiger skins were legal. At most, the evidence suggested that had the official been contacted about the legality of sales of pre-Act wildlife, he would have responded that often pre-Act wildlife could be sold. There is no evidence, however, that the advice referred to interstate or foreign sales of tiger skins.

In short, Clark presents no evidence to support his claim that he reasonably relied on statements made to him by a government official that the interstate or foreign sale of a pre-Act tiger skin rug is legal. Clark's defense of entrapment by estoppel requires such evidence and fails without it.

### V

Clark assigns error to his sentence on the ground that the magistrate judge used an inflated estimate of the Siberian rug's value to calculate the offense level. After considering Clark's objections, the magistrate judge adopted the value of the rugs determined by the probation officer. Clark does not dispute the valuation of $6,000 placed on the Bengal tiger skin rug. He contests the $15,000 value attributed to the Siberian rug.

The sentencing guidelines authorize an increase in the defendant's offense level when the combined market value of the wildlife exceeds $20,000. U.S.S.G. §§ 2Q2.1(b)(3)(A) & 2F1.1(b)(1) (1989). We review findings of fact for clear error. *United States v. Vinson*, 886 F.2d 740, 741–42 (4th Cir.1989).

The evidence of the Siberian rug's value consisted of Clark's own statements that the Siberian rug was more precious than the Bengal and that he was trying to get

$15,000 for it. Although Clark was familiar with the market for tiger skin rugs, he offered no evidence of fair market value to dispute the presentence report's recommendation. The magistrate judge did not err by relying on Clark's conversation with Hundley to find that the Siberian rug was valued at $15,000. Because the total value of the rugs was $21,000, the magistrate judge properly increased Clark's offense level as prescribed by the sentencing guidelines.

AFFIRMED.