8 F.3d 822
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Reginald A. NOBLE, Defendant-Appellant.
 No. 92-5286.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993.
Decided: October 18, 1993.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CR-91-70)
 Argued: Timothy Francis Cogan, O'Brien, Cassidy & Gallagher, L.C., Wheeling, West Virginia, for Appellant.
 Samuel Gerald Nazzaro, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 On Brief: William A. Kolibash, United States Attorney, Wheeling, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RESTANI, Judge of the United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Following trial by jury, Reginald A. Noble was convicted of eight drug-related counts and sentenced to 92 months' incarceration. Noble appeals various aspects of his convictions and sentencing. We hold that the district court erred in the sentencing phase of Noble's trial in its calculation of his base offense level. As to all Noble's other assignments of error, we find no merit; therefore, we affirm in part, reverse in part, and remand for resentencing.
 
 
 2
 * Noble was indicted on ten of eleven counts submitted to a grand jury in the Northern District of West Virginia on May 23, 1991. The charges stemmed from various distributions of marijuana that occurred between March 1989 and the date of the indictment. Noble only challenges on appeal his conviction on two of the ten counts: Count One, which charged Noble with conspiring to possess with intent to distribute and with distributing in excess of fifty kilograms of marijuana, 21 U.S.C. §§ 841(a)(1), 846; and Count Nine, which charged Noble with possessing with intent to distribute marijuana within 1,000 feet of a school, 21 U.S.C. §§ 841(a)(1), 860.
 
 
 3
 On September 18, 1991, after a three-day trial, the jury found Noble guilty of all the drug-distribution-related counts, i.e., Counts One, Two, Three, Six, Seven, Eight, Nine, and Eleven. In addition, the jury found, in response to special interrogatories, that Counts Two, Three, Six, Seven, Eight, Nine, and Eleven occurred within 1,000 feet of a school.
 
 
 4
 The convictions rested on evidence from several witnesses who had purchased marijuana from Noble over the period of time in question. In addition, drug enforcement agents set up a reverse sting to establish evidence of Noble's purchasing practices. In the sting operation, Noble purchased approximately four pounds of marijuana from an undercover officer.
 
 
 5
 On April 2, 1992, the district court conducted a sentencing hearing. Applying the United States Sentencing Guidelines, the court established Noble's base offense level at 24, see U.S.S.G. § 2D1.1(c)(10), and then made a five-level enhancement. The court enhanced by one level because Noble's offenses involved selling marijuana within 1,000 feet of a school, see id. § 2D1.2(a)(2), and enhanced by four levels based on Noble's role as leader or organizer of the offenses, see id. § 3B1.1(a). The court assessed one criminal history point based on a petit larceny committed by Noble in 1989. See id. § 4A1.1(c). The court rejected Noble's request for a two-level reduction for acceptance of responsibility. The enhanced level of 29, taken together with the criminal history category of I, indicated a sentencing range of 87 to 108 months. The district court sentenced Noble to 92 months' incarceration.
 
 II
 
 6
 Noble raises numerous questions on appeal, all of which can be grouped into the following five categories: (1) whether there was sufficient evidence to convict Noble of the offenses charged; (2) whether certain evidence was admissible; (3) whether certain jury instructions were proper; (4) whether the sentencing guidelines were applied correctly; and (5) whether Noble was afforded effective assistance of counsel.
 
 
 7
 The scope of our appellate review differs within each category. The proper test for judging the sufficiency of evidence in criminal cases is whether, viewing the whole record in the light most favorable to the Government, the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, is sufficient for a jury to find the defendant guilty beyond a reasonable doubt. United States v. Johnson, 659 F.2d 415, 419 (4th Cir. 1981). The standard for reviewing the admissibility of evidence is whether the district court abused its discretion in making its evidentiary rulings. E.g., United States v. Clark, 986 F.2d 65, 68 (4th Cir. 1993). In the absence of an objection by trial counsel, a district court's grant or denial of a jury instruction is reviewed for plain error only. E.g., United States v. McCaskill, 676 F.2d 995, 997 (4th Cir.), cert. denied, 459 U.S. 1018 (1982).
 
 
 8
 When reviewing the district court's application of the federal sentencing guidelines, we must accept the court's findings of facts as to a controverted matter at sentencing, and affirm those findings unless they are clearly erroneous. 18 U.S.C. § 3742(e); United States v. Vinson, 886 F.2d 740, 742 (4th Cir. 1989), cert. denied, 493 U.S. 1062 (1990). Although we give due deference to the district court's application of the guidelines to the facts, when an issue raised turns primarily on the legal interpretation of a guideline term, on which of several offense conduct guidelines most appropriately apply to the facts as found, or on the application of the grouping principles, we invoke de novo review. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).
 
 
 9
 Finally, if properly raised,[1] a claim of ineffective assistance of counsel is reviewed as a mixed question of law and fact and is, therefore, reviewed de novo. Strickland v. Washington, 466 U.S. 668, 68990 (1984); Hoots v. Allsbrook, 785 F.2d 1214, 1219 n.6 (4th Cir. 1986).
 
 III
 
 10
 Three of Noble's five categories of error attack his convictions for the offenses charged. We will discuss the following categories in turn: sufficiency of the evidence to convict; admissibility of the evidence; and propriety of the jury instructions.
 
 
 11
 * Noble argues that the Government did not present sufficient evidence to warrant his conviction on two counts. As to Count One, Noble claims that the Government's case-in-chief failed to establish two necessary elements. First, Noble argues that the Government did not prove an amount of marijuana greater than fifty kilograms. Noble's second attack on the Count One conviction is that the Government failed to prove the involvement of another person to make Noble's conduct a conspiracy.
 
 
 12
 Count One is based on 21 U.S.C. §§ 841(a)(1) and 846. Section 841(a)(1) provides that
 
 
 13
 it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
 
 
 14
 21 U.S.C. § 841(a)(1). Section 846 provides that
 
 
 15
 [a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the subject of the attempt or conspiracy.
 
 
 16
 Id. § 846. Section 841(b)(1) provides a series of penalty enhancements for violations of section 841(a)(1), which are based on the weight and type of drug involved. Id. § 841(b)(1). For a violation involving less than one hundred but more than fifty kilograms of marijuana, the period of imprisonment cannot exceed twenty years. Id. § 841(b)(1)(C).
 
 
 17
 To secure a conviction under section 841, the Government must prove three elements beyond a reasonable doubt: (1) knowing (2) possession of a controlled substance (3) with intent to distribute it. See United States v. Sanchez, 961 F.2d 1169, 1175 (5th Cir.), cert. denied, 113 S. Ct. 330 (1992). The quantity of drugs alleged in a section 841 count goes to the availability of a sentencing enhancement and, therefore, is not an essential element of the crime. See, e.g., United States v. Powell, 886 F.2d 81, 84-85 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990); United States v. Wood, 834 F.2d 1382, 1388-90 (8th Cir. 1987); United States v. Gibbs, 813 F.2d 596, 600 (3d Cir.), cert. denied, 484 U.S. 822 (1987).
 
 
 18
 Because the amount of the drugs goes to sentencing and not guilt, the Government need not prove a given amount in order to obtain a conviction under section 841(a). In this case, however, the Government presented relevant testimony as to amount as summarized below:
 
 Witness Amount Identified
 
 19
 William Metzner1/8 oz. purchased periodically from Noble, starting at once or twice a month and progressing to five or six times a month over the '89-'90 school year;[2] 1 oz. purchased; 2-5 lbs. viewed in Noble's apartment
 
 
 20
 Total (Metzner) = 5 lbs. 5 oz.
 
 
 21
 Timothy Mitchell1/4 oz. purchased periodically; 1/2 lbs. pur chased; 1/4 lb. purchased
 
 
 22
 Total (Mitchell) = 1 lb.
 
 
 23
 Rod Squires1/4 to 1/2 oz. purchased once or twice weekly throughout the '89-' 90 school year; 2 lbs. purchased; testified that he approximated his total purchases at 6 to 7 lbs.; saw 2 lbs. in a styrofoam container in Noble's kitchen; saw a 6 by 4 pile of one-lb. bags of marijuana in Noble's bedroom, which he estimated to be 20 to 80 lbs.
 
 
 24
 Total (Squires) = 89 lbs.
 
 
 25
 Ida Olszewski1 to 2 oz. purchased; saw a knapsack half full of marijuana in Noble's apartment; did not estimate weight (Government suggests 2 lbs. without evidentiary substantiation)
 
 
 26
 Total (Olszewski) = 2 oz.
 
 
 27
 Charles Radcliff1/8 oz. purchased weekly from September '89 to November '89;[3] saw 1 lb. of marijuana in Noble's refrigerator; 1/8 oz. purchased every two weeks from February to April 1990;[4] saw Noble selling 3 oz. to others; 1 oz. purchased on March 19, 1990, and 1 oz. purchased on March 20, 1990; 1 1/2 oz. purchase in last part of April 1990; saw 1 to 1 1/4 lb. in Noble's refrigerator and being brought out of Noble's bedroom
 
 
 28
 Total (Radcliff) = 2 lbs. 13 oz.
 
 
 29
 Charles Jacksonsold 4 lbs. to Noble in sting
 
 
 30
 Total (Jackson) = 4 lbs.
 
 
 31
 Brad Hudson testified that during sting Noble claimed to have just purchased $20,000 worth of marijuana; estimated $20,000 to represent between 15 and 20 lbs.
 
 
 32
 Total (Hudson) = 20 lbs.
 
 
 33
 Reginald Noble purchased 2 lbs. on a trip to Texas
 
 
 34
 Total (Noble) = 2 lbs.
 
 
 35
 Viewing this evidence in the light most favorable to the Government, we conclude that these witnesses' testimony establishes Noble's possession of as much as approximately 124 pounds, or 55 kilograms, of marijuana, enough to justify the Government's enhanced charge of Possession with Intent to Distribute in Excess of 50 Kilograms of Marijuana.
 
 
 36
 Noble next contends that the Government failed to show a conspiracy, as required under Count One. To establish conspiracy, the Government must show that Noble knowingly entered into a plan with one or more persons to commit the underlying crime. See United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991). The existence of a conspiracy need not be proved by direct evidence. It may be established by circumstantial evidence from which a jury reasonably could infer the existence of the conspiracy and the members thereof. United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.), cert. denied, 447 U.S. 925 (1980).
 
 
 37
 The Government introduced evidence that others sold to Noble for redistribution, bought from Noble for redistribution, and operated Noble's distribution network on his behalf when he was not present. The participants included Charles Radcliff, Rod Squires, William Metzner, Ida Olszewski, Kip Harris, Christian Hill, Cliff Meade, and Stratton Douthat. Squires, Metzner, Olszewski, and Radcliff have all entered into plea agreements with the Government on related charges. This evidence is sufficient for the jury to find beyond a reasonable doubt that Noble conspired with at least one of these persons to engage in the distribution activities for which he was convicted.
 
 
 38
 Noble also challenges the sufficiency of the evidence presented on Count Nine. Noble contends that the Government did not demonstrate beyond a reasonable doubt that the distribution in question occurred within 1,000 feet of a school.[5] Like the drug amount issue discussed under Count One, the school requirement is an enhancing provision and not a element of the crime. See United States v. Wake, 948 F.2d 1422, 1430-34 (5th Cir. 1991), cert. denied, 112 S. Ct. 2944 (1992). The criminal conduct is provided by 21 U.S.C. § 841(a)(1); 21 U.S.C. § 860(a) only provides for an enhanced sentence if the section 841(a)(1) conduct occurred within 1,000 feet of a school. The Government need establish the presence of the school by a preponderance of the evidence for sentencing purposes alone, and it introduced uncontroverted evidence that the West Virginia University ("WVU") Fire School was within 1,000 feet of Noble's base of operation. Section 860(a) provides for a sentence enhancement when the conduct occurs within 1,000 of "a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university." 21 U.S.C. § 860(a). As a vocational school, the WVU Fire School falls within the scope of section 860(a), and uncontroverted evidence of its presence would satisfy the government's burden for the sentencing process.
 
 B
 
 39
 Noble raises two evidentiary issues. First, Noble contests the admission of lay opinion regarding the smell of marijuana in his apartment. Federal Rule of Evidence 701 permits the introduction of lay opinions that are based rationally on the perception of the witness and are helpful to a clear understanding of facts in issue. Fed. R. Evid. 701. Several police officers testified during the Government's casein-chief that when they entered Noble's apartment, they were overpowered by the strong odor of marijuana. This testimony was introduced to establish the quantity of marijuana that had been present in Noble's apartment prior to the officers' search.[6] Although the testimony was based on the perceptions of the witnesses, it was not helpful to a clear understanding of the facts. The freshness of an odor provides no direct corollary to the amount of odor-producing object present. Because, however, Noble's counsel failed to object to the introduction of these lay opinions, and the testimony had no bearing on proof of the elements of the substantive offenses charged, we see no reason to review further the impact of the evidence's admission on Noble's convictions or sentencing.[7] See Fed. R. Crim. P. 52(b).
 
 
 40
 The second evidentiary matter Noble raises is the introduction of certain of his post-arrest statements. There are no allegations that the statements were coerced. Noble contends that the statements violate the Fifth Amendment, however, because they were irrelevant. The statements in question involve comments by Noble to the police to the effect of "I have gotten myself into this, and I am going to get myself out. I think I'll just sit this one out." They were introduced to demonstrate Noble's cavalier attitude about the investigation. The district court held an in camera hearing and determined that the statements were relevant and admissible under Rule 801(d)(2)(A) as admissions by Noble against his interest. The hearing included a finding that the statements were not coerced. We find no abuse of discretion in this determination.
 
 C
 
 41
 Noble challenges two instructions given to the jury. First, Noble argues that the district court's instruction eliminating the Government's burden of proving a specific quantity of drugs was in error. The court gave the following instruction:
 
 
 42
 In the indictment, it is alleged that a particular amount of marijuana was involved. The evidence in the case need not establish that the amount or quantity of marijuana was as alleged in the indictment but only that a measurable amount of marijuana was, in fact, the subject of the acts charged.
 
 
 43
 As discussed previously, specific amounts of marijuana go to sentencing, not guilt, so the instruction was proper.
 
 
 44
 The second instruction Noble challenges addressed Counts Two and Eleven, which charged Noble with the maintenance of a residence to distribute marijuana within 1,000 feet of a school, 21 U.S.C. § 856. In its indictment, the Government stated that Noble had both opened and maintained a marijuana house, while the statute only requires one or the other.[8] The district court instructed the jury that the statutory requirements are conjunctive, detailing the essential elements of a section 856 violation as follows:
 
 
 45
 [T]he defendants did willfully knowingly and intentionally open and maintain a place for the purpose of distributing and using a controlled substance, namely, marijuana....[9]
 
 
 46
 Noble contends that there was not enough evidence to find both "opening" and "maintaining," and that the conflicting nature of the instructions results in reversible error. Although it is not clear whether the jury convicted on the basis of opening, maintaining, or opening and maintaining, the Government presented sufficient evidence on both points to support a conviction based on a conjunctive interpretation of section 856's language. If the jury chose to follow the conjunctive interpretation, this only heightened the Government's burden of proof. Noble has shown no error in this instruction.
 
 IV
 
 47
 We now turn to the district court's sentencing of Noble. The district court determined that Noble's base offense level should be 24. The district court based its selection of the offense level on a finding that the marijuana involved in the charged conspiracy weighed at least 80 kilograms but less than 100 kilograms (from 180 to 225 pounds). See U.S.S.G. § 2D1.1(c)(10). The district court then made a five-level enhancement based on the location of the offense near a school and the defendant's involvement as leader of the conspiracy. See id. §§ 2D1.2(a)(2); 3B1.1(a). The court rejected a two-level enhancement for obstruction of justice, see id. § 3C1.1, and a two-level decrease for acceptance of responsibility, see id. § 3E1.1(a). Using an adjusted offense level of 29 and a criminal history category of I, the judge sentenced Noble to 92 months incarceration from the applicable range of 87 to 108 months. Noble attacks the imposed sentence on five separate bases.
 
 
 48
 * First, Noble suggests that the district court erred in its calculation of the drug amounts used to determine his base offense level. The court worked from a base offense level of 24, derived from a finding of the involvement of 80 to 100 kilograms of marijuana in the offenses. Adopting the probation officer's findings as detailed in the Presentence Report, see United States v. Terry, 916 F.2d 157, 160 (4th Cir. 1990), the district court found Noble's criminal conduct to involve 181 to 242 pounds (80.44 to 107.56 kilograms) of marijuana.
 
 
 49
 Aggregating the totals summarized in the table in section III(A) supra from the testimony of the Government's witnesses, we conclude that the Government has presented sufficient evidence to establish, at the most, the involvement of 124 pounds (55 kilograms) of marijuana in Noble's conspiracy. Although a sufficient weight to permit Noble's indictment for violation of 21 U.S.C.ss 841(a)(1) and 846-conspiracy to possess with intent to distribute and to distribute in excess of fifty kilograms of marijuana-the 124 pounds cannot sustain the district court's conclusion of a base offense level of 24. Instead, Noble's base offense level should be 20, the appropriate level for a conspiracy involving from 40 to 60 kilograms of marijuana (90 to 135 pounds). See U.S.S.G. § 2D1.1(c)(12). Starting at a base offense level of 20 and adding the five-level enhancement,[10] the district court would arrive at a sentencing range of 57 to 71 months, well below the sentence imposed of 92 months. Because the evidence, viewed in the light most favorable to the Government, falls short by 57 pounds[11] of establishing the base offense level used by the district court, we hold that the district court's determination of a base offense level of 24 is clearly erroneous.
 
 
 50
 Noble further contends, in regard to drug weights, that the Government must show that, during the period in question, he knew he had dealt with the quantity of marijuana necessary to impose the given sentence. Noble mistakenly relies on United States v. Lam KwongWah, 924 F.2d 298, 304-05 (D.C. Cir. 1991), a case decided before the 1989 amendments to the sentencing guidelines. The 1989 amendments removed the scienter requirement previously imposed by section 1B1.3. Therefore, we find this assignment of error without merit.
 
 B
 
 51
 The second objection Noble raises to his sentencing is the court's imposition of a four-level increase in his offense level based on Noble's role in the offense. The applicable provision of the sentencing guidelines states:
 
 
 52
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 53
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 54
 U.S.S.G. § 3B1.1. The district court, in sentencing, found that Noble's offense involved five people and was otherwise extensive. The Government presented the testimony of Timothy Mitchell, Ida Olszewski, and Charles Radcliff that they each were buying from Noble for the purpose of redistribution. In United States v. Fells, 920 F.2d 1179 (4th Cir. 1990), cert. denied, 111 S. Ct. 2831 (1991), we held that supplying controlled substances to other individuals who were themselves distributors satisfied the "otherwise extensive" activity requirement of this enhancement provision. Id. at 1182. The district court's decision to make this enhancement, based on "otherwise extensive" activity alone, was without error; therefore, we need not discuss the advisability of the enhancement based on the involvement of five or more participants.
 
 C
 
 55
 Noble's next argument is that the Government committed sentence entrapment. This concept of governmental conduct inducing the defendant to engage in activity only to justify a higher sentence has not been accepted by any of our sister circuits.[12] We hold steadfastly to this position on the facts of this case; Noble's situation does not represent a basis on which to adopt a sentence entrapment theory for this circuit.
 
 
 56
 In addition, the Government's sting operation did not materially affect the district court's assessment of Noble's base offense level. Although the operation involved an offer to sell Noble marijuana in bulk quantities, Noble only purchased about four pounds. He said that he could not buy more because he had just spent most of his money on a big drug purchase in Pittsburgh. Therefore, even if we were to view the conduct as entrapping, the resulting error would be harmless.
 
 D
 
 57
 The fourth sentencing error Noble raises is the district court's denial of a two-level reduction for Noble's acceptance of responsibility in the offense. Section 3E1.1(a) of the sentencing guidelines provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, [the court should] decrease the offense level by 2 levels." In United States v. Gordon, 895 F.2d 932 (4th Cir.), cert. denied, 498 U.S. 846 (1990), we held that, in order for section 3E1.1 of the guidelines to apply, a defendant must first accept responsibility for all of his criminal conduct. Id. at 936.
 
 
 58
 Noble admits guilt to Counts Three, Six, Seven, Eight, and Nine only, but still appeals issues in Counts Two and Nine. The guideline commentary makes clear that the reduction should not apply when "a defendant ... puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." See U.S.S.G. § 3E1.1 commentary 2. The Government prosecuted a three-day trial against Noble, and at sentencing he professed guilt to various of the offenses. He still contests some of the conduct and appeals aspects of the offenses to which he professes guilt. Noble has not met the Gordon standard and, therefore, we hold, is not entitled to the reduction.
 
 E
 
 59
 Noble's final allegation of sentencing error involves the assessment of one criminal history point for a petit larceny conviction. The conviction occurred in 1989 when Noble was 21, so there are no issues of it being stale or expunged. Section 4A1.1(c) of the guidelines allows the district court to add one point for each prior sentence not otherwise dealt with in sections 4A1.1(a) and (b). See U.S.S.G. § 4A1.1. Prior sentences include " [s]entences for misdemeanor and petty offenses" unless expressly excluded. See id. § 4A1.2(c). Petit larceny is not excluded, id. § 4A1.2(c)(1), (2), and therefore was properly counted. In addition, the counting of the petit larceny did not move Noble into a different criminal history category or alter his range of sentence. We conclude that Noble has demonstrated no error on this issue.
 
 V
 
 60
 The final issue raised by Noble is whether Noble was afforded effective assistance of counsel. A successful claim of ineffective assistance of counsel must establish two elements: first, the defendant must show that counsel's representation fell below an objective standard of reasonableness; second, the defendant must show that this transgression prejudiced his defense to the point that, but for counsel's ineffectiveness, the defendant most likely would have prevailed. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
 
 
 61
 Noble suggests that his trial counsel fell below the requisite standard of reasonableness by failing to object to various instructions and pieces of evidence, making uncalled for statements in opening and closing arguments, and calling what Noble deems inopportune recesses that demonstrated his lack of qualification to proceed at those junctures. To the extent that this conduct involves discretionary trial strategy, we defer to Noble's counsel and forbear review. See Briley v. Bass, 750 F.2d 1238, 1247 (4th Cir. 1984), cert. denied, 470 U.S. 1088 (1985). Any other conduct that might suggest substandard performance by Noble's attorney certainly did not result in Noble's convictions or sentence. As our preceding discussion has demonstrated, all of Noble's allegations of error with the exception of the improper determination of his base offense level are without merit, and Noble has made no showing that the error in the offense level assessment resulted from attorney ineffectiveness. Therefore, even if his attorney had dealt with the matters as Noble now suggests, Noble's status at this point would be no different.
 
 VI
 
 62
 Finding no merit in Noble's assignments of error regarding his substantive convictions, including sufficiency of the evidence, admissibility of evidence, instruction of the jury, and effectiveness of counsel, we affirm Noble's convictions. To the extent that Noble's sentence was based on a base offense level of 24, the sentence is clearly erroneous. All other aspects of Noble's sentencing were proper. Therefore, we reverse Noble's sentence and remand the case to the district court for resentencing not inconsistent with both the reversing and affirming portions of this opinion.
 
 
 63
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 A claim of ineffective assistance of counsel should be made by motion under 28 U.S.C. § 2255 in the district court and not on direct appeal unless it "conclusively appears" from the record that the defendant was not provided effective representation. United States v. Fisher, 477 F.2d 300, 302 (4th Cir. 1973) (citing United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir. 1970))
 
 
 [2]
 Based on Metzner's testimony of this pattern of purchases, we calculate that he might have purchased four ounces from Noble over the 19891990 school year. In doing so, we assume that he purchased a 1/8 ounce twice a month for half the school year (or the months of November to February), and that he purchased a 1/8 ounce six times a month over the second half of the school year (or the months of March to June). We start with November because Metzner testified that he made these purchases "mostly through the winter of '89 and '90 until about May or June of '90." These assumptions render four ounces through the following calculation: [ (4 X 2) k (4 X 6) ] X 1/8 ounce
 
 
 [3]
 These purchases represent 1.625 oz. of marijuana (13 weeks in September, October, and November times 1/8 oz. per week)
 
 
 [4]
 These purchases represent 0.875 oz. of marijuana (7 out of 13 weeks in February, March, and April times 1/8 oz. per purchase)
 
 
 [5]
 Counts Two, Three, Six, Seven, Eight, and Eleven also involve distribution activities within 1,000 feet of a school. Noble does not challenge these convictions, nor explain why the evidence would be sufficient to support convictions on these counts, but not Count Nine
 
 
 [6]
 The search of Noble's apartment revealed only a small amount of marijuana remaining unsmoked in some pipes. The officers' testimony, therefore, was introduced to establish a quantity of marijuana thought to be present in Noble's apartment just prior to the search
 
 
 [7]
 In adopting the Presentence Report's findings as to the weight of the drugs involved for sentencing purposes, the district court found five to ten pounds of marijuana attributable to these lay opinions. Reliance on the officers' testimony to establish the involvement of any more than five pounds of marijuana would be clearly erroneous because only Officer Greg Fleming estimated a weight in conjunction with his testimony, and that weight was five pounds. Due to the tenuous nature of the conclusion as to weight drawn by Officer Fleming, we would discourage the district court, in resentencing Noble, from permitting the five-pound amount to make the difference in its selection of one base offense level over another. We are precluded, however, from so holding directly because of trial counsel's dereliction in objecting to the opinion
 
 
 [8]
 Section 856(a)(1) provides, in pertinent part, that "it shall be unlawful to knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1) (emphasis added)
 
 
 [9]
 The district court also instructed the jury:
 21 U.S.C. § 856 cited in the indictment provides that it shall be unlawful to knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substances....
 
 
 [10]
 We discuss the propriety of the enhancement infra section IV(B)
 
 
 [11]
 The Government's proffer of evidence and the Presentence Report differ in the following respects: The Presentence Report overestimated the marijuana attributable to the testimony of Metzner by at least 31 pounds, of Squires by at least 22 pounds, of Olszewski by at least two pounds, of Radcliff by at least two pounds, and of Officer Greg Fleming by at least five pounds. The Presentence Report underestimated the marijuana attributable to the testimony of Mitchell by at least one pound and of Hudson by at least four pounds. Totaling the over and underestimates, we arrive at a minimum discrepancy of 57 pounds
 
 
 [12]
 The Eighth Circuit Court of Appeals has recognized the possibility that egregious circumstances might facilitate the application of such a theory, but has not employed it in any holdings directly. See, e.g., United States v. Barth, 990 F.2d 422, 424-25 (8th Cir. 1993) ("[W]e hold that sentencing entrapment may be legally relied upon to depart under the sentencing guidelines, but factually was not present in this case...."); United States v. Stuart, 923 F.2d 607, 613-14 (8th Cir.) (same), cert. denied sub nom. Hayden v. United States, 112 S. Ct. 145 (1991); United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.) (same), cert. denied, 111 S. Ct. 1602 (1991) (same)