**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 94-5452

NATHAN Y. MASON, SR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Richard L. Voorhees, Chief District Judge.
(CR-93-23)

Submitted: July 9, 1996

Decided: July 19, 1996

Before ERVIN, Circuit Judge, and BUTZNER and PHILLIPS,
Senior Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jack W. Stewart, Asheville, North Carolina, for Appellant. Mark T.
Calloway, United States Attorney, Thomas R. Ascik, Assistant United
States Attorney, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

A jury convicted Nathan Y. Mason, Sr., of selling firearms without keeping records as required by 18 U.S.C.A. § 923 (West 1976 & Supp. 1996), in violation of 18 U.S.C.A. §§ 922(b)(5), 924 (West Supp. 1996), 27 C.F.R. § 178.124 (1996) (Counts 1-3, 6); and soliciting another to commit a felony involving the use of physical force in violation of 18 U.S.C.A. § 373 (West Supp. 1996) (Count 4).**1** Mason appeals, contending that the district court erred in allowing the jury to use transcripts as aids while they listened to tape-recorded conversations between Mason and undercover officers, a three-week delay in the trial prejudiced him, and the evidence was not sufficient to convict him. Finding no error, we affirm.

I.

Taking the evidence in the light most favorable to the Government, see United States v. Smith, 44 F.3d 1259, 1269-70 (4th Cir.), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3817 (U.S. May 15, 1995) (No. 94-8163), testimony disclosed that Mason owned and operated a used-car dealership and was a firearms dealer licensed by the federal government. As a federal firearms dealer, Mason must keep certain firearms transaction records, including Form 4473 promulgated by the Bureau of Alcohol, Tobacco, and Firearms ("BATF"). Form 4473 has two sections. The purchaser must complete Section A by filling in his name, sex, height, weight, race, date and place of birth, and address and by answering eight questions, including whether he is prohibited from possessing a firearm; the dealer must complete Section B at the time of the sale by checking the purchaser's identification, listing

_____

**1** The jury found Mason not guilty of retaliating against another for participating in a federal proceeding in violation of 18 U.S.C.A. § 1513(a)(1) (West Supp. 1996) (Counts 5, 8); and selling a stolen firearm and ammunition in violation of 18 U.S.C.A. §§ 922(j), 924 (West Supp. 1996) (Count 7). Further, the Government moved to dismiss the portion of Count 7 that referred to ammunition. Hearing no objection from Mason, the district court granted the Government's motion.

information about the firearm sold, and retaining Form 4473 in his records.

Local authorities investigated Mason for possible drug and gun violations. Officer Lempia testified that he met Mason on several occasions while working undercover as a drug dealer. Lempia purchased from Mason a .357 magnum for $350 and received a bill of sale written by Mason with the name "Weldon Gates" as the seller. Lempia testified that Mason did not present Form 4473 to him.

Officer Edney testified that he discussed guns with Mason and purchased a .22-caliber pistol while working undercover posing as a convicted felon. According to Edney, Mason did not present Form 4473 --or any other paperwork--to him. Edney and Officer McDonald later contacted Mason about purchasing a TEC-9 pistol. Edney testified that they followed Mason's instructions and obtained a handgun permit in the fictitious name of "Susan Edwards King" so that Mason would sell the TEC-9 pistol to them.

Officer McDonald testified that he worked undercover as a biker and met Mason through a mutual friend. Mason told McDonald that he could sell him two weapons without any paperwork. McDonald corroborated Edney's testimony that Mason told them how a convicted felon could obtain a handgun permit. When McDonald and Edney purchased the TEC-9 pistol, they gave Mason the "Susan Edwards King" handgun permit, and Mason produced Form 4473. McDonald followed Mason's instructions and signed the name "Susan Edwards King" as the buyer. Mason also sold another TEC-9 pistol to McDonald, who used the name "Susan Edwards King" on the paperwork.

During the gun transactions, Mason mentioned to McDonald that he had repossessed a van he had sold to a customer of his used-car dealership and that he was in some trouble over it. [2] McDonald testi-

_____

[2] Mason's reference to the repossession stemmed from his sale of a van to Curtis and Doris Greenway. Mason financed the purchase, and the Greenways agreed to pay $100 a month. After missing a few payments, the Greenways filed for bankruptcy. The Greenways gave the bankruptcy

3

fied that Mason said he wanted to send someone a message and that pipe bombs were a good way to do so. Mason asked McDonald how much it would cost to "mess somebody up" and told McDonald to contact the person who could help him do the job. Mason stated that he would pay $2000 in advance and $2000 when Curtis Greenway was shot in the kneecaps. McDonald testified that Mason said he could provide the person with the Greenways' routine and where they lived. Mason also identified Curtis Greenway as the target, and Mason drew a map to the Greenways' house and offered untraceable tags for the car used in the assault. Mason later wanted to postpone-- but not cancel--the assault on Greenway. The assault on Greenway never happened, however, because the officers' undercover identities were compromised and, as a result, Mason was arrested. On the fourth day of trial, McDonald was hospitalized, which necessitated a three-week delay in the trial and interrupted defense counsel's cross-examination.

During the Government's case-in-chief, the court admitted into evidence tape-recorded conversations between Mason and the undercover officers. While the jury listened to the tapes, the court allowed the Government, over Mason's objection, to distribute transcripts of the conversations to the jurors to aid their understanding of the tapes.[3] The court also admitted the transcripts into evidence but gave a limiting instruction regarding the purpose for which they could be used. The court instructed the jury that the only evidence before them were the tapes--more particularly, the words on the tapes; that they must evaluate the officer's testimony as to how the tapes were made,

_____

court the wrong address for Mason. As a result, only the Greenways appeared in court when their bankruptcy plan was adopted. When the Greenways returned home, their van was gone. Because the Greenways believed Mason took their van, they filed for sanctions against him in bankruptcy court for violating the automatic stay. Mason settled the sanctions action by paying the Greenways $1100, giving them the title to the van, and paying attorneys' fees.

[3] On cross examination, Mason's counsel questioned the accuracy of some of the transcripts and tapes, objected to the portions of the tapes that were not transcribed, and objected to tapes that were not the original recordings.

4

whether they were made accurately, and whether they actually represented what the officers said they represented; that the transcripts were allowed not as evidence of what was said on the tapes, but only as a guide; and that if any discrepancy existed between what was said on the tapes and what was shown on the transcripts, the tapes must prevail.

After presenting Mason's defense, counsel moved to dismiss Counts 1-3, 6-8 against Mason, which the court denied. The court then instructed the jurors, among other things, that the evidence consisted of the exhibits admitted at trial and that they were the sole judges of the credibility of the witnesses and the weight to be given their testimony. The court instructed the jurors to rely on their own recollection of the testimony and reiterated that the tapes were evidence but the transcripts were not, and if they perceived a conflict between the tapes and the transcripts, they should be guided solely by the tapes.

The jury convicted Mason of selling firearms without recording the proper information, (Counts 1-3, 6), and of soliciting another to commit a felony involving the use of physical force (Count 4). The court sentenced Mason to thirty-six months imprisonment on each count, with all counts to run concurrently, ordered three years of supervised release on each count to run concurrently, and imposed a $2000 fine and a $250 special assessment. This appeal followed.

II.

Mason contends that the Government's use of tapes and transcripts prejudiced him. He claims that the "transcripts were inherently unreliable . . . due to an incessant number of omissions and misinterpretations [of the tapes] in the transcripts." (Appellant's Br. at 18). We review for an abuse of discretion the district court's decision to allow the use of transcripts to aid in the presentation of tape-recorded evidence. United States v. Capers, 61 F.3d 1100, 1107 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3779 (U.S. May 20, 1996) (No. 95-7022); United States v. Collazo, 732 F.2d 1200, 1203 (4th Cir. 1984), cert. denied sub nom. Alvarez v. United States, 469 U.S. 1105 (1985); see also United States v. Clark, 986 F.2d 65, 68-69 (4th Cir. 1993).

5

Mason's counsel conducted thorough cross-examinations of the undercover officers who made the tape recordings by challenging the accuracy of the transcripts, objecting to portions on the tapes that were not transcribed by the Government, and objecting to tapes that were not the original recordings. See Capers, 61 F.3d at 1107; Clark, 986 F.2d at 69; Collazo, 732 F.2d at 1204. Moreover, the district court gave an appropriate limiting instruction. [4] The court stated that the tapes were the evidence before the jury--not the transcripts that could only be used as aids--and that if they found any discrepancy between the tapes and the transcripts, the tapes must prevail. See Capers, 61 F.3d at 1107; Collazo, 732 F.2d at 1203 (finding that cautionary instructions cured prejudice that might have resulted from discrepancies between tape and transcript). We find no abuse of discretion in the district court's decision to allow the jury to use the transcripts while listening to the tapes. See Capers, 61 F.3d at 1107.

III.

Mason next contends that the three-week delay in the trial caused by the illness of a key Government witness, Officer McDonald, unfairly prejudiced him because it impaired counsel's "ability to conduct a vigorous and effective cross-examination of Officer McDonald" and because the delay permitted the jury undue reflection on the Government's evidence. (Appellant's Br. at 21-22). Because Mason did not object to this delay during the trial, we review the district court's decision to delay the trial only for plain error. See United States v. Olano, 507 U.S. 725, 732-37 (1993).

Although Mason contends that he was prejudiced, we find for several reasons that he was not. First, because the district court acknowledged that McDonald was a key witness in the trial, the delay was necessary so that he would then be subject to cross-examination. Further, it does not appear that the Government used the delay to gain an unfair advantage in light of McDonald's sudden illness. Finally, Mason's counsel had an opportunity to extensively cross-examine

_____

[4] Mason cites United States v. Schanerman, 150 F.2d 941 (3d Cir. 1945), as support for his contention that he was prejudiced because the transcripts were so misleading that the discrepancies could not be cured by a cautionary instruction. We do not find Schanerman dispositive.

6

McDonald after the delay. McDonald's cross-examination, followed by Mason's presentation of evidence, was the last evidence presented to the jury. Cf. United States v. LaRouche, 896 F.2d 815, 823-24 (4th Cir.), cert. denied, 496 U.S. 927 (1990); United States v. Little, 567 F.2d 346, 348-49 (8th Cir. 1977) (noting that when deciding whether to grant continuance before trial, court must balance nature of case, diligence of party requesting continuance, conduct of other party, effect of continuance, and asserted need for continuance), cert. denied, 435 U.S. 969 (1978). We therefore find no plain error. See Olano, 507 U.S. at 732-37.

IV.

Finally, we review a denial of a motion for acquittal under a sufficiency of evidence standard. Fed. R. Crim. P. 29; see Smith, 44 F.3d at 1269-70. The relevant question is not whether we are convinced of guilt beyond a reasonable doubt, but rather whether the evidence, when viewed in the light most favorable to the Government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. Smith , 44 F.3d at 1269-70; see Glasser v. United States, 315 U.S. 60, 80 (1942). If substantial evidence exists to support a verdict, the verdict must be sustained. Glasser, 315 U.S. at 80.

Mason contends that the jury failed to consider and weigh the testimony of defense witnesses. Mason also asserts that"this Court is allowed to weigh the credibility of all witnesses and evidence and does not bow merely to a consideration of that evidence in a light most favorable to the Government." (Appellant's Br. at 24). But contrary to Mason's assertion, even if some facts support a contrary conclusion, we do not weigh the evidence or judge the credibility of witnesses. United States v. Reavis, 48 F.3d 763, 771 (4th Cir.) (citing United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989)), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3890 (U.S. June 19, 1995) (No. 94-9316). Here, the jury rejected Mason's version of events and chose to believe the Government. Such a decision is not reviewable. Reavis, 48 F.3d at 771.

Mason also alleges that the evidence was insufficient to convict him of selling firearms without the proper records because the Gov-

7

ernment did not introduce the records into evidence. **5** Under § 922(b)(5), Mason, as a licensed firearms dealer, must note in his records the name, age, and residence of the individual purchaser. 18 U.S.C.A. § 922(b)(5); see 27 C.F.R.§ 178.124(c), (f) (requiring purchaser to certify he is not prohibited from possessing firearm; requiring licensed dealer to identify purchaser and note method of identification; requiring dealer to sign form if he does not know or has reasonable belief that purchaser is prohibited from possessing firearm).

Although the records were not produced at trial, testimony disclosed numerous violations by Mason. Mason sold four firearms to undercover officers--one of whom said he was a convicted felon-- and either did not offer Form 4473 to them or encouraged them to use false information, such as the name "Susan Edwards King." This evidence was sufficient for a reasonable jury taking the evidence in the light most favorable to the Government to convict Mason of selling firearms without the proper records. See Glasser , 315 U.S. at 80.

V.

Accordingly, we affirm Mason's convictions. We dispense with oral argument based on our previously entered order granting Mason's motion to waive oral argument and submit the case on the briefs.

AFFIRMED
_____

**5** The records were suppressed before trial.

8