UNITED STATES of America,
Plaintiff–Appellee,

v.

Jonathan BRANCH, a/k/a Jamal
Jamal, Defendant–Appellant.

No. 91–5407.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1992.

Decided July 29, 1992.

Judith Lenore Fitzgerald, Baltimore, Md., for defendant-appellant.

James G. Warwick, Asst. U.S. Atty., Baltimore, Md. (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and WILKINS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

WILKINS, Circuit Judge:

Jonathan Branch appeals his convictions for conspiracy to distribute and distribution of heroin and cocaine, *see* 18 U.S.C.A. § 2 (West 1969); 21 U.S.C.A. §§ 841, 846 (West 1981 & Supp.1992), and for attempting to evade or defeat income taxes, *see* 26 U.S.C.A. § 7201 (West 1989). Although Branch raises numerous allegations of error, he primarily argues that the district court erred by conducting an in camera hearing addressing the authenticity of tape recordings of conversations in which Branch and his co-conspirators participated and by not requiring the Government to offer sufficient evidence before the jury to support a finding of authenticity. Finding no error, we affirm.

I.

Branch and his co-conspirators were suspected of heroin and cocaine distribution activities in Baltimore, Maryland. The Government began an investigation into these activities and, subsequently, obtained authorization to place wiretaps on certain telephone lines. Over 80 conversations relating to the conspiracy were recorded as a result of the wiretaps.

Before trial the Government requested an in camera hearing to present testimony that it proposed would establish the authenticity of these tape recordings. The district court conducted the hearing, during which the Government presented the testimony of 26 government agents who monitored the recording of the conversations. These monitors verified the proper operation of the recording devices, their own competence to operate the recorders, the accuracy of the tapes, the improbability of any additions or deletions, and the absence of any inducement by the government that would have encouraged the conversations. Branch objected to authentication of the tapes at the in camera hearing, claiming that this procedure prevented the jury from properly evaluating their accuracy and genuineness. The district court concluded that the Government presented sufficient authenticating evidence and assured Branch that, although the Government would not

have to present the testimony of all of the monitors, it would require the Government to lay a proper foundation for admission of the tapes before the jury.

During the nine-day trial, the Government presented testimony from Agent Thompson, the FBI supervisor of the wiretap operations in Baltimore. Thompson identified many of the voices in the recorded conversations and explained how he prepared extracts from the original tape recordings. Earlous Tripp, a co-conspirator who had participated in many of the conversations, also testified to the accuracy of the recordings and provided additional voice identifications. Further, Detective Walter Akers, who participated in the investigation and prepared transcripts of the tapes, identified voices on the tapes. The Government, however, did not present testimony from the monitors. The district court admitted the tapes into evidence over Branch's objection that the Government had failed to present sufficient evidence to allow the jury to find that the tapes were authentic.

## II.

Branch argues that the district court conducted an in camera hearing in lieu of requiring the Government to present sufficient evidence at trial to support a finding that the tape recordings were authentic. This procedure, he contends, prevented the jury from properly assessing their authenticity. His argument misconstrues the procedure followed by the district court and evinces a misunderstanding of the showing the Government must make in order to properly authenticate tape recordings.

## A.

In order to be relevant and admissible, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.

R.Evid. 401; see Fed.R.Evid. 402. Authentication "represent[s] a special aspect of relevancy," Fed.R.Evid. 901(a) advisory committee's note, in that evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims, *United States v. Sliker*, 751 F.2d 477, 497–99 (2d Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832, *and* 471 U.S. 1137, 105 S.Ct. 2679, 86 L.Ed.2d 697 (1985). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a).

 Resolution of whether evidence is authentic calls for a factual determination by the jury, *Sliker*, 751 F.2d at 497–99, and admissibility, therefore, is governed by the procedure set forth in Federal Rule of Evidence 104(b) "relating to matters of conditional relevance generally." 5 Weinstein & Berger, *Weinstein's Evidence* ¶ 901(a)[02], at 901–26 (1991) [hereinafter *Weinstein's Evidence*]; see also *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 284–85 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[1] Before admitting evidence for consideration by the jury, the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic. See Fed.R.Evid. 104(b) advisory committee's note; see also Fed.R.Evid. 901(a) advisory committee's note; see generally 2 Saltzburg & Martin, *Federal Rules of Evidence Manual* 476–81 (5th ed. 1990). Although the district court is charged with making this preliminary determination, because authentication is essentially a question of conditional relevancy, the jury ultimately resolves whether

---

1. Federal Rule of Evidence 104(b) provides: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, [here, that the evidence is that which the proponent

claims] the court shall admit it upon ... the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

evidence admitted for its consideration is that which the proponent claims. *See id.*

▉ Because the ultimate resolution of authenticity is a question for the jury, in rendering its preliminary decision on whether the proponent of evidence has laid a sufficient foundation for admission, the district court must necessarily assess the adequacy of the showing made before the jury. 5 *Weinstein's Evidence* ¶ 901(a)[02], at 901–27. An in camera hearing addressing authenticity does not replace the presentation of authenticating evidence before the jury; the district court must revisit this issue at trial. Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.

▉ This is not to say that an in camera hearing to assess the authenticity of evidence may not be appropriate. This procedure insures that the jury will not be tainted by hearing prejudicial evidence—or learning of its existence—until the proponent has demonstrated that it will be able to provide an adequate foundation for admission. Moreover, in deciding the admissibility of tape recordings district courts must consider the statutory requirements imposed by 18 U.S.C.A. §§ 2510–21 (West 1970 & Supp.1992) and will often be required to rule on hearsay objections to co-conspirators' statements, *see generally Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). In camera consideration of the admissibility of tape recordings is particularly appropriate under these circumstances. The district court, therefore, did not err in conducting an in camera hearing to address the authenticity of the tape recordings; indeed, this practice may be preferable.[2]

▉ Branch correctly argues that district courts cannot rely on the authenticity showing made during an in camera hearing to support the admission of a tape recording. However, here the district court did not rely on the in camera showing made by the Government in concluding that sufficient evidence had been presented to support a finding by the jury that the tape recordings were authentic. Thus it did not, as Branch contends, conduct an in camera hearing in lieu of requiring the presentation of authenticating evidence at trial. Rather, after the in camera hearing, the court required the Government to present authenticating evidence to the jury.

### B.

▉ Having concluded that the procedure followed by the district court was proper, we next address whether the Government presented sufficient evidence before the jury to support a finding that the tape recordings were authentic. Branch argues that the foundation was insufficient because the Government failed to present evidence on each of the factors set forth in *United States v. McKeever*, 169 F.Supp. 426 (S.D.N.Y.1958), *rev'd on other grounds*, 271 F.2d 669 (2d Cir.1959).[3] We disagree. Although the presentation of evidence satisfying each of the *McKeever* factors generally would provide a sufficient foundation for admission of tape recordings, we have not held that such a presentation is required in every case. Rather,

---

**2.** We do not intend to suggest that in camera authentication is required in circumstances beyond those mandated by Rule 104(c); we merely recognize that it is not improper to conduct a preliminary investigation into such matters outside of the presence of the jury.

**3.** These criteria include proof:
(1) That the recording device was capable of taking the conversation now offered in evidence.
(2) That the operator of the device was competent to operate the device.
(3) That the recording is authentic and correct.
(4) That changes, additions or deletions have not been made in the recording.
(5) That the recording has been preserved in a manner that is shown to the court.
(6) That the speakers are identified.
(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.
169 F.Supp. at 430.

**1372**

these factors provide guidance to the district court when called upon to make rulings on authentication issues. *See United States v. Long,* 651 F.2d 239 (4th Cir.), *cert. denied,* 454 U.S. 896, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *United States v. Jones,* 730 F.2d 593, 597 (10th Cir.1984).

■ We have consistently allowed district courts wide latitude in determining if a proponent of tape recordings had laid an adequate foundation from which the jury reasonably could have concluded that the recordings were authentic and, therefore, properly admitted. *See, e.g., United States v. West,* 574 F.2d 1131, 1138 (4th Cir.1978); *United States v. Baller,* 519 F.2d 463, 464 (4th Cir.), *cert. denied,* 423 U.S. 1019, 96 S.Ct. 456, 46 L.Ed.2d 391 (1975); *United States v. Fuller,* 441 F.2d 755, 762 (4th Cir.), *cert. denied,* 404 U.S. 830, 92 S.Ct. 74, 30 L.Ed.2d 59 (1971). We review a decision by the district court to admit tape recordings into evidence for an abuse of discretion and will not find error unless the foundation for admission is "clearly insufficient to insure the accuracy of the recording." *Jones,* 730 F.2d at 597.

Applying this standard, we hold that the district court did not abuse its discretion in determining that the Government presented sufficient evidence of authentication before the jury. Agent Thompson's testimony conveyed detailed information about implementation and operation of the wiretaps. He explained how he and another agent prepared the extracted tape recordings introduced at trial. Thompson stated that he was familiar with the voices on the tapes because he talked with many of the participants and because he reviewed the original tapes and voice exemplars. He then identified various voices, including Branch's, as the recordings were played to the jury. Tripp also verified the accuracy of the recorded conversations in which he participated and identified voices on the tapes, including Branch's. Finally, Detective Akers testified that he was familiar with many of the voices on the tapes based on personal conversations that he had with some of the co-conspirators. This testimony was sufficient to support a finding by the jury that the tapes were what the Government claimed—accurately recorded conversations involving Branch, his co-conspirators, and others.

III.

We have carefully examined the other arguments advanced by Branch on appeal. Finding that they lack merit, we reject them without discussion.

AFFIRMED.