**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4149

ROBERT ALLEN MERRITT,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4177

ELIZABETH TAYLOR GRADY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4196

THOMAS ELMORE HARRIS, JR.,
Defendant-Appellant.

Appeals from the United States District Court

for the Middle District of North Carolina, at Durham.
William L. Osteen Sr., District Judge.
(CR-95-213)

Argued: January 30, 1998

Decided: April 22, 1998

Before RUSSELL* and WILKINS, Circuit Judges, and TRAXLER,
United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ellen Payne Quackenbos, SKADDEN, ARPS,
MEAGHER & FLOM, L.L.P., New York, New York; W. David
Lloyd, Greensboro, North Carolina, for Appellants. Robert Michael
Hamilton, Assistant United States Attorney, Greensboro, North Caro-
lina, for Appellee. **ON BRIEF:** Mark S. Cheffo, New York, New
York, for Appellant Grady; William C. Ingram, FLOYD, ALLEN &
JACOBS, L.L.P., Greensboro, North Carolina, for Appellant Merritt.
Walter C. Holton, Jr., United States Attorney, Greensboro, North Car-
olina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this consolidated appeal, Robert Allen Merritt ("Merritt"), Eliza-
beth Taylor Grady ("Grady") and Thomas Elmore Harris ("Harris"),
collectively "defendants," appeal their convictions for conspiracy to
possess with intent to distribute crack cocaine base, see 21 U.S.C.A.

_____

*Judge Russell participated in the hearing of this case at oral argument
but died prior to the time the decision was filed. The decision is filed by
a quorum of the panel. 28 U.S.C. § 46(d).

2

§ 846 (West Supp. 1997) and possession of crack cocaine base, <u>see</u> 21 U.S.C.A. § 841(a)(1) (West 1981). We affirm.

## I.

Merritt, Grady, and Harris were convicted of operating a crack distribution group and crack house in Carrboro, North Carolina, near the University of North Carolina's Chapel Hill campus. In early 1994, Carrboro police officers apprehended University of North Carolina student Dennis McDowell (the "informant") in possession of crack cocaine, who later agreed to assist police and the Drug Enforcement Administration by acting as an informant in drug investigations. At the time, the informant had known Grady, Merritt and Harris for approximately nine months. At the request of police, the informant called Grady's residence on numerous occasions to arrange purchases of crack cocaine and its delivery to parking lots near Grady's residence. The deliveries were made by Merritt, Harris, or a third "runner," Eddie Atwater ("Atwater"). The telephone calls and deliveries were recorded, and the deliveries were witnessed by law enforcement officers. A joint indictment was returned in August 1995 against Grady, Merritt, Harris and Atwater, alleging a conspiracy to possess with intent to distribute crack cocaine, as well as possession of crack cocaine.[1]

## II.

We first address two issues raised by all defendants concerning the district court's admission of evidence at trial. We affirm as to each.[2]

_____

[1] All defendants were convicted of Count 1 of the indictment, for conspiracy to possess with intent to distribute cocaine base. The remainder of the counts were for possession with intent to distribute cocaine base. Grady was convicted of Count 2, Merritt was convicted of Counts 2 through 5, and Harris was convicted of Counts 4 and 5. At the time of trial, Atwater was awaiting separate trial for his alleged participation in the conspiracy.

[2] Defendants also collectively challenge 21 U.S.C. § 841 and § 2D1.1 of the United States Sentencing Guidelines, which impose a 100 to 1 ratio in the penalties for cocaine and cocaine base. Contending that the provisions contain an ambiguity in the application of the penalties,

A.

Defendants first contend that the district court erred in admitting into evidence an anonymous note that had been seized during the execution of a search warrant at defendant Grady's residence. Defendants contend the note was hearsay under Fed.R.Evid. 801(c), and that it should have been excluded under Fed.R.Evid. 403. We review the district court's rulings for an abuse of discretion. See United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994).

Documents found in a defendant's possession may be admitted, not to prove the truth of the matter asserted, but "to show the circumstantial relationship of the parties to the scene, the contraband or other parties." United States v. Marino, 658 F.2d 1120, 1124 (6th Cir. 1981). Furthermore, a document found in a defendant's possession may be admissible as an "adoptive admission" under Fed.R.Evid. 801(d)(2)(B). "Just as silence in the face of an accusation may constitute an admission to its truth, possession of a written statement becomes an adoption of its contents." Marino , 658 F.2d at 1125. "[S]o long as the surrounding circumstances tie the possessor and the document together in some meaningful way, the possessor may be found to have adopted the writing and embraced its contents." United States v. Paulino, 13 F.3d 20, 24 (1st Cir. 1994). Such adoptive admissions are not hearsay and are properly admitted into evidence. See e.g., id. at 22-25 (customer receipt for a Postal Service money order found in apartment used as a drug distribution outlet was admissible as an adoptive admission); United States v. Ospina, 739 F.2d 448, 451 (9th Cir. 1984) (business cards with handwritten notes and motel receipt found in defendant's hotel room were admissible as adoptive admissions). Here, the anonymous note was addressed to"Lit," Grady's nickname. It was found in a dresser drawer in a bedroom containing a woman's clothing, along with other documents bearing Grady's name, including a county tax receipt. The author of the note, albeit

_____

defendants argue that the rule of lenity requires a sentencing court to impose the lesser penalty. Defendants, however, concede that this issue was decided adversely to their position in United States v. Fisher, 58 F.3d 96, 98-99 (4th Cir. 1995). Accordingly, we find no merit to this exception.

unknown, was clearly desirous of obtaining "rock" cocaine.**3** We are satisfied that the content of the note and its location sufficiently tie the document to Grady and her co-conspirators, and is consistent with other evidence that defendants were operating a crack distribution business from Grady's residence. Accordingly, the district court did not abuse its discretion in admitting the note as evidence.

Defendants also contend that the district court should have excluded the note under Fed.R.Evid. 403, asserting that its probative value was substantially outweighed by its prejudicial effect. We disagree. The note, addressed to Grady and obviously evidencing drug activity, was admitted as additional evidence of Grady's knowledge of and participation in the drug conspiracy and to corroborate the taped drug negotiations between defendants and the informant. Accordingly, the district court did not abuse its discretion in concluding that the note's probative value outweighed its prejudicial effect and in admitting it into evidence.

B.

Defendants next contend that the district court erred in admitting tape recordings of telephone conversations between the informant and defendants to set up controlled crack purchases, alleging the government failed to properly authenticate the tapes. Decisions of the district court to admit tape recordings into evidence are reviewed for an abuse of discretion, and we will not find error unless the foundation for admission is "clearly insufficient to insure the accuracy of the recording." United States v. Branch, 970 F.2d 1368, 1372 (4th Cir. 1992) (internal quotation marks omitted). In determining the admissibility of a recording, courts are guided by seven factors outlined in United States v. McKeever, 169 F. Supp. 426 (S.D.N.Y. 1958), rev'd on other grounds, 271 F.2d 669 (2d Cir. 1959).**4** Defendants argue that in order

_____

**3** The note was written on an envelope and read as follows: "Lit, I have paid Lucille rent and turned her heat on. I am going to the motel for one more night and get some rest by myself, so give me five rocks and $20.00 and we will ... add it up tomorrow." J.A. 430.

**4** The specific factors are:

> (1) That the recording device was capable of taking the conversation now offered in evidence.

5

to authenticate the recordings the government was also required to show that the informant listened to the tapes immediately after the recording and again immediately prior to his testimony at trial. This court has never embraced this position; rather, recordings are admissible so long as the testimony is "sufficient to support a finding by the jury that the tapes [are] what the Government claimed." Branch, 970 F.2d at 1372. Here the government established how the calls and recordings were made, and demonstrated a chain of custody for each. Additionally, the government played the tapes for the informant on the morning of trial and confirmed that the tapes accurately reflected the conversations that had occurred. Accordingly, we conclude the district court did not abuse its discretion in admitting the tapes as evidence.

III.

Defendant Grady has independently raised several additional exceptions to her convictions and sentence. We address and reject each in turn.

_____

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

Branch, 970 F.2d at 1371, n.3 (quoting McKeever, 169 F. Supp. at 430); see also United States v. Long, 651 F.2d 239, 242 (4th Cir. 1981). The factors provide guidance to the trial judge in ruling on an authentication question; however, proof of each factor is not required in every case. See Branch, 970 F.2d at 1371-72.

6

A.

Grady was convicted of conspiracy to possess and distribute crack cocaine from August 1994 to August 1995, and of possession with intent to distribute crack cocaine on December 8, 1994. She contends the evidence produced at trial was insufficient to support her convictions. We disagree. The evidence revealed that Grady was directly involved in at least three undercover purchases of crack cocaine by the informant. On September 14, 1994, the informant called Grady's residence and asked if she could "do five" rocks of crack cocaine. After Grady confirmed that she could, she gave the telephone to Merritt to arrange a meeting place and Merritt did, in fact, deliver five rocks of crack cocaine to the informant shortly thereafter. The informant paid Merritt $100 for 5 rocks of crack cocaine at $20.00 per rock. On October 13, 1994, the informant again called Grady, advised her that he wanted to get "[f]ifteen," and told her that he had "300 beans." The informant testified that "300 beans" meant 300 dollars -- 15 rocks of crack cocaine at $20 each. Grady asked him when he wanted to get it and, upon being told that he wanted it "sometime tonight," she told him, "Well, let us know." In a second conversation, Grady assured the informant that she would wrap the crack in "brown wrapper or something" and Atwater later delivered crack cocaine to the informant. On December 8, 1994, the informant called Grady a third time to purchase crack cocaine and Merritt later delivered one $20 rock. In addition to these transactions, the informant set up several purchases directly with Harris and Merritt during 1994 and 1995, which originated from Grady's residence and were witnessed by law enforcement officials. An ensuing search warrant, executed at Grady's residence on August 30, 1995, uncovered the handwritten note addressed to Grady which evidenced an additional drug transaction between her and an unknown buyer.

In reviewing a challenge to the sufficiency of the evidence, we ask "whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (emphasis in original). We are satisfied that there was sufficient evidence to support each of Grady's convictions.

7

B.

Grady also challenges her sentence on three separate grounds. We address these contentions in turn.

Grady first urges that we vacate her sentence and remand her case for resentencing because the district court violated Fed.R.Crim.P 32(c)(3)(A) by neglecting to expressly inquire as to whether she had reviewed and discussed her presentence report with counsel.**5** Because this issue was not raised before the district court, we review it under the plain error standard. See United States v. Lockhart, 58 F.3d 86, 88 (4th Cir. 1995). "[B]efore vacating [Grady's] sentence, we must be convinced that (1) an error was committed; (2) the error was plain; and (3) the error affected Grady's substantial rights." Id. If so, "we must also decide whether the error is of a type that`seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). In the instant case, there is nothing in the record which affirmatively demonstrates that Grady read the presentence report and discussed it with her counsel before being sentenced. As a result, we are forced to conclude that the district court committed plain error. See Lockhart, 58 F.3d at 88-89. However, we must still determine whether the error affected the outcome of Grady's sentencing hearing, i.e. whether it was prejudicial. Id. at 88-89.

We note first that Grady does not contend that she did not read the report, or that she did not discuss its contents with her counsel prior to sentencing. Instead, she proceeds directly to the argument that she could have challenged the attribution of 30 grams of crack cocaine to her for sentencing purposes, contending that the distribution of this amount during the conspiracy was not foreseeable as to her. This argument is unavailing. Under the sentencing guidelines, a "defendant should be held accountable for the conduct of others that was both in furtherance of the conspiracy and reasonably foreseeable in connection with the conspiracy." United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994). Thus, the amount that may be attributed to Grady is

_____

**5** Federal Rule of Criminal Procedure 32(c)(3)(A) requires the sentencing court to "verify that the defendant and defendant's counsel have read and discussed the presentence report."

8

not limited to the amounts for which she personally took orders. See id. Grady's presence report outlines, in detail, sixteen crack cocaine purchases that were made from the conspiracy group. Testimony at trial showed clearly that the vast majority of the purchases originated from Grady's house, which the evidence revealed to be the center of operations for the drug enterprise. As evidenced by the tape recordings, Grady was directly involved in at least three controlled drug buys, and in these three, two different runners were dispatched to deliver the drugs to the informant. Thus, the only reasonable inference from the evidence presented to the jury was that she was an active participant in the drug distribution conspiracy, and the jury so found.

Grady did not testify at trial, but did choose to address the district court judge at sentencing. She contended she was not involved with her two co-defendants and had been trying to get them to quit. She specifically denied to the district court judge participating in any drug-related calls for drugs:

> THE COURT: Are you saying that you didn't take any telephone calls dealing with somebody wanting to purchase drugs?
>
> DEFENDANT GRADY: Not as I know of.

J.A. 450. Grady can hardly be prejudiced by a lack of opportunity to present evidence showing only a limited criminal liability when she denied to the district court any criminal liability at all. Furthermore, any argument that a lack of foreseeability could be established by the fact that more sales were attributed to her than those with which she was personally involved would be without merit, as would be the argument that insignificant variations in sales amounts could be a basis for showing unforeseeability.

Grady's second allegation of prejudice is that she could have challenged a statement in the presence report that she was the leader of the conspiracy, which she contends may have influenced the sentencing outcome. We find this contention to be equally meritless. Although the presence report does characterize Grady as the "lead"

9

person, it made no upward adjustment for her role in the offense. Furthermore, the district court, presented with an agreed upon guideline range of 78 to 97 months, sentenced Grady to 80 months imprisonment -- only two months over the minimum guideline sentence -- and made no reference to a "lead" role to justify the sentence imposed.

Accordingly, Grady has failed to show that her sentencing would have been affected by challenges to the drug amounts attributed to her or to the characterization of her role in the conspiracy. We conclude that the technical Rule 32 violation did not affect her substantial rights, and we decline to vacate Grady's sentence.

Grady next contends that she is entitled to resentencing because the district court did not make a factual determination of the amount of drugs foreseeable to her. In the absence of a timely objection by the defendant, a district court need not conduct an independent factual inquiry and may adopt factual findings contained within the presentence report. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). At sentencing, Grady's trial counsel agreed that the presentence report accurately reflected the applicable offense level and guideline range, and did not object to the district court's explicit adoption of the presentence report's factual findings and guideline application. Accordingly, the district court was not required to conduct an independent factual inquiry into the amount of drugs foreseeable to Grady and did not err in attributing to Grady the total quantity of crack sold by the members of the conspiracy.

Grady's final contention is that she received ineffective assistance of counsel because her trial counsel failed to object to the amount of drugs attributed to her at sentencing. Claims of ineffective assistance of counsel are generally not appropriate on direct appeal and should be raised in a motion pursuant to 28 U.S.C.A. § 2255 (West 1994), unless the record conclusively shows that counsel did not provide effective assistance. See United States v. King , 119 F.3d 290, 295 (4th Cir. 1997). Having carefully reviewed the record, we conclude that it does not conclusively show that counsel's representation fell below an objective standard of reasonableness. See generally Strickland v. Washington, 466 U.S. 668, 688 (1984). Accordingly, Grady's claim

10

of ineffective assistance of counsel is not properly before this court and must be dismissed.

IV.

Defendant Harris raises an independent challenge to his conviction, contending that the district court erred in denying his motion for mistrial because Grady's counsel, in closing argument, implied that Grady would have testified against her son and co-defendant Harris had she testified at trial. Harris' argues that the challenged comment by Grady's attorney "so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994) (internal quotation marks omitted). We disagree. While the comment was improper, the district court immediately issued an appropriate curative instruction, warning the jury that arguments of counsel were not evidence and that the jury was not to speculate as to why Grady did not testify. We also reject Harris' contention that the comment drew attention to the fact that Harris did not testify. We find nothing in the comment which would support this interpretation and, in any event, the district court also instructed the jury that a defendant is not required to produce any evidence and that no inference whatsoever can be drawn from the fact that a defendant does not testify. Accordingly, the district court did not err in denying Harris' motion for a mistrial.

V.

For the foregoing reasons, we affirm the convictions of Merritt, Grady, and Harris.

AFFIRMED

11