

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2003

# USA v. Khorozian

Precedential or Non-Precedential: Precedential

Docket No. 02-2820P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Khorozian" (2003). *2003 Decisions*. Paper 303.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/303

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 25, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2820

UNITED STATES OF AMERICA

v.

ANGELA KHOROZIAN,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 00-cr-00393-1)
District Judge: Honorable William H. Walls

Argued April 24, 2003

Before: SCIRICA,* *Chief Judge*, AMBRO and
GARTH, *Circuit Judges*

(Opinion filed June 20, 2003)

Herald Price Fahringer, Esquire
 (Argued)
Erica T. Dubno, Esquire
Lipsitz, Green, Fahringer, Roll,
 Salisbury & Cambria, LLP
780 Third Avenue, 32nd Floor
New York, NY 10017

---

* Judge Scirica began his term as Chief Judge on May 4, 2003.

Ivan Stephan Fisher, Esquire
251 East 61st Street
New York, NY 10021

*Attorneys for Appellant*

Christopher J. Christie
 United States Attorney
George S. Leone
 Chief, Appeals Division
Gail Zweig (Argued)
 Assistant U.S. Attorney
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102-2535

*Attorneys for Appellee*

## ORDER AMENDING SLIP OPINION

AMBRO, *Circuit Judge*:

WHEREAS, the panel for the captioned case has determined that a portion of the precedential Opinion filed June 20, 2003, be amended as follows (which does not affect the rights of the parties):

Delete Section II.B.1 ("Evidentiary Issue") and replace with the following:

*1. Evidentiary Issue*

While Kono was on the stand, Khorozian's counsel sought to move into evidence a fax of the (allegedly fake) investment contract Khorozian sent to Kono, at the top of which was a header — allegedly generated by Khorozian's fax machine — bearing the transmission date of May 15.[1] Khorozian wanted to establish, through this fax, that the investment contract was drafted on or before May 15 to

---

1. The Government had already introduced an English-language version of the purported agreement in its case-in-chief, sans fax header. Khorozian sought to introduce a Portuguese-language version that she alleged she faxed to Kono.

refute Queirolo's testimony that it was concocted as part of a plan to deceive the bank. She also wanted to show that she and Teixiera had a commercial relationship before May 25, the date that Queirolo received the checks with Teixiera's name on them, to support her contention that she believed the funds were to be used for the investment project described in the fax (and thus that she had no intent to cause the bank loss).

The District Court refused to admit the fax, ruling that Kono, as the recipient of the fax, was not the proper party to lay a foundation for admitting the transmission and that, in any event, the fax was hearsay. Khorozian argues that the District Court erred and seeks a new trial.

The District Court is mistaken on both counts. The Court was correct that ordinarily a fax's sender would authenticate the document by testifying to such foundational facts as that the fax machine automatically date-stamps transmissions, that it was in proper working order, that she did not tamper with it, *etc. Cf. United States v. Branch*, 970 F.2d 1368, 1371 n.3 (4th Cir. 1992) (setting out as factors relevant to a foundation for admission of a tape recording, *inter alia*, that the device was in proper working order, that no alterations were made to the recording at issue, and that the operator could properly operate the machine). In this case Khorozian exercised her Fifth Amendment right against self-incrimination and thus did not take the stand. However, Kono could — and did — authenticate the fax under Federal Rule of Evidence 901(a) by testifying that she *received* the fax on the date indicated on the header. Authentication does not conclusively establish the genuineness of an item; it is a foundation that a jury may reject.

Moreover, neither the header nor the text of the fax was hearsay. As to the header, "[u]nder FRE 801(a), a statement is something uttered by 'a person,' so nothing 'said' by a machine . . . is hearsay." 4 Mueller & Kirkpatrick, *Federal Evidence* § 380, at 65 (2d ed. 1994). The fax's contents were not hearsay because Khorozian sought to introduce the fax for the fact that it contained the name Teixiera (and was sent on May 15), not for its truth. The fax is relevant, regardless of its truth, to rebut the Government's

contention that she and Queirolo fabricated the document after May 25 as part of a scheme to defraud the bank.

Because the District Court's errors were non-constitutional — misapplication of the Federal Rules of Evidence — we may nonetheless affirm the jury's verdict if we "believe[ ] . . . that it is highly probable that the error did not contribute to the judgment." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 924 (3d Cir. 1985) (emphasis removed). We do not believe that the jury's verdict would have been different had the fax been admitted. First, the other evidence against Khorozian, discussed above, was significant. Second, even were the fax introduced, it would have been consistent with the rest of the Government's case. Fax headers are easily fabricated by the sender. *See Total Containment, Inc. v. Environ Products, Inc.*, 921 F. Supp. 1355, 1370 n.3 (E.D. Pa. 1995), *affirmed in part and vacated in part on other grounds*, 1997 WL 16032 (Fed. Cir. 1997) ("Apparently, a fax burn-in can be rather easily faked. The time and date printed by the machine can be changed merely by resetting the machine."). Queirolo testified that Khorozian intended to bribe an African official to corroborate the fax. Kono may have been that person.

Third, admission of the fax would not meaningfully have aided defense counsel's ability to develop the argument that Khorozian and Teixiera had a business relationship before May 25. Kono testified that she received "a contract between Mrs. Khorozian and her investor . . . around the fifteenth [of May.]" Even if in the course of Kono's testimony it was unclear to the jury that the document she allegedly received was the investment contract containing Teixiera's name, in closing argument Khorozian's counsel drew this connection clearly. Defense counsel referred to the allegedly fabricated joint venture agreement between Sugarbank and Teixiera, bearing a date of May 8, which the Government had already introduced into evidence as a "fake." And but a minute later, counsel referred to Kono's testimony. He completed the connection by asking rhetorically: "[H]ow is it that Mrs. Kono could have gotten a copy of that document [on May 15] that wasn't even created until June 1 [according to the Government] when she got all upset about those wire instructions[?]"

5

We therefore hold that the District Court's errors were harmless.

By the Court,

/s/ Thomas L. Ambro

Circuit Judge

DATED: August 25, 2003

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*