**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4242

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

ALLEN MARTIN SMITH, a/k/a Slim,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:21-cr-00106-D-3)

Argued:  October 31, 2024                    Decided:  January 17, 2025

Before AGEE, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert Johnson Parrott Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Katherine Twomey Allen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Nicole M. Argentieri, Acting Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Allen Martin Smith was arrested in February 2021 following his participation in a high-speed vehicle chase that spanned several North Carolina counties. He was subsequently charged under 18 U.S.C. § 922(g)(1) with possession of a firearm by a felon and aiding and abetting his codefendant Kenneth Piper with the same conduct. Smith pleaded not guilty and proceeded to trial. At the close of evidence, he moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, which the district court denied. Thereafter, the jury returned a guilty verdict. Smith then renewed his motion for a judgment of acquittal, which the district court again denied.

On appeal, he raises two arguments: (1) that the district court abused its discretion by admitting certain video footage into evidence; and (2) that the judgment against him is not supported by substantial evidence. For the reasons explained below, we affirm.

I.

A.

In February 2021, Smith and Piper led police on a high-speed chase through several North Carolina counties. At some point during the chase, Smith filmed a Snapchat[1] video of himself and Piper taking turns waving a black handgun and pointing it at the camera.

---

[1] Snapchat is a popular messaging app that allows users to post or send photos and videos that disappear after a set period of time. *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 184–85 (2021). Snapchat also allows users to post images or videos to a "story," which disappears after a twenty-four-hour period. *Id.*

3

The two men also laugh, brag about fleeing, and threaten anyone who crosses them.[2] The same day as the high-speed chase, a Wilson County resident named Randy—who had previously worked with the police—sent a copy of the Snapchat video to Major Anthony Carter in the Wilson County Sheriff's Office.

Eventually, Piper and Smith's vehicle ran out of gas, and they abandoned it in a roadside ditch. The pair jumped over a fence and ran into the woods, but Piper dropped the firearm he had flaunted in the Snapchat video while clearing the fence.

Soon after Piper and Smith abandoned their vehicle, police began searching for them. During the search, a canine retrieved a black Hi-Point 9mm handgun bearing serial number P1697108 approximately fifteen feet from the abandoned vehicle on the other side of a chest-high fence. The gun was missing its magazine but had one bullet in the chamber. The missing magazine held bullets of the same caliber—9mm—as a magazine that law enforcement officers recovered when attempting to apprehend Piper earlier the same month. The officers did not, however, recover a firearm during that earlier encounter.

Smith later emerged from the woods, surrendered to police, and was questioned after waiving his *Miranda* rights. During that police questioning, Smith confirmed that he and Piper had previously met in prison, were both members of the "Gangster Disciples" gang, and that Piper had picked him up from Greenville because he was wanted for a parole

---

[2] A few illustrative examples from the video: (1) Piper brandishes the firearm while hurling expletives and stating that "it is not a . . . game"; (2) Piper swears on "everything [he] . . . loves" that someone is going to "get smoked"; (3) and Smith waves the firearm back and forth while threatening "no, no, no," "we're coming back," and "this ain't no . . . game."

violation. Smith also relayed that he and Piper had split up when they abandoned their vehicle. Finally, Smith admitted that he had seen Piper earlier that day with a black handgun which "he thought . . . looked like a .380." J.A. 49. Police also apprehended Piper.

## B.

Smith and Piper were indicted by a federal grand jury, each charged with one count of possession of a firearm by a felon on or about February 22, 2021, or aiding and abetting one another with the same, in violation of 18 U.S.C. §§ 922(g)(1), 924, and 2. Smith pleaded not guilty and proceeded to trial.[3]

On the eve of trial, Smith filed a motion in limine to exclude the Snapchat video that he recorded during the high-speed chase. He argued that the video was insufficiently authenticated and should be excluded "under Rules 401, 403, and 901 of the Federal Rules of Evidence." J.A. 22. Further, Smith contended that the video possessed by the Government appeared to be a recording of the original Snapchat video. The district court deferred ruling on the motion until the relevant point of trial.

The two-day trial commenced with the Government putting on seven witnesses and introducing into evidence the Hi-Point 9mm handgun, photos of the gun, and—over Smith's foundation objection—the video of Smith and Piper. The Government's witnesses included: (1) four officers who were involved in the high-speed chase, the recovery of the

---

[3] The grand jury also charged Piper and another co-defendant, Eric Pineda, with additional offenses arising from other, earlier conduct. Piper and Pineda pleaded guilty to the charges they faced, and they raise no appellate challenge to their convictions. Only the charges against Smith are presently before the Court.

gun, and Smith's post-apprehension interview; (2) Major Carter of the Wilson County Sheriff's Office, who received the Snapchat video from Randy and testified regarding its authenticity; (3) a firearms expert; and (4) Eric Pineda, one of Smith's co-defendants, who testified regarding various admissions Smith apparently made to him shortly before the trial.[4] The Government closed its case after reading into evidence the parties' stipulations concerning Smith and Piper's prior convictions.

Smith opened—and closed—his case solely by introducing into evidence three photographs of the gun. Smith then orally moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied that motion.

Following deliberations, the jury found Smith guilty of possession of a firearm by a felon and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. Soon thereafter, he filed a renewed motion for judgment of acquittal or, in the alternative, for a new trial. The district court orally denied this motion a few months later. In so doing, the district court first explained that a defendant challenging the sufficiency of the evidence bears a heavy burden: "The Court will sustain the jury's verdict, if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." J.A. 259. The district court also emphasized that it was bound to "construe the evidence in the light most favorable to the verdict, assuming its credibility and drawing all reasonable inferences from it." *Id.* Applying this standard, the district court

---

[4] Relevant here, Pineda testified that when he and Smith were in federal custody together, Smith told him about the high-speed chase and admitted to possessing the Hi-Point firearm and waving it around in a Snapchat video with Piper.

held that the "jury properly found beyond a reasonable doubt that the evidence presented by the Government supported a finding that Smith possessed the firearm as charged and was a convicted felon." J.A. 260. Of particular relevance to the district court in reaching this conclusion were the following pieces of evidence: the witness testimony presented by the Government; the Snapchat video; the parties' stipulations; and Smith's damning admissions to Pineda.

After denying Smith's renewed motion, the district court sentenced him to ninety-six months' imprisonment, to be followed by three years of supervised release. Smith timely noticed his appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Smith raises two main issues challenging his conviction. First, he contends that the district court abused its discretion in permitting the Snapchat video to be entered into evidence. And second, he asserts that the district court erroneously denied his motion for judgment of acquittal. We address each argument in turn.

## A.

Smith first challenges the district court's evidentiary rulings that permitted the Snapchat video to be entered into evidence. Specifically, he maintains that admission of the video was improper because (1) the video was not sufficiently authenticated, (2) the

7

video violated the best evidence rule, and (3) the video was unfairly prejudicial and insufficiently probative.

We "review decisions to admit evidence for abuse of discretion." *United States v. Vidacak*, 553 F.3d 344, 348 (4th Cir. 2009) (quoting *United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005)). "Under the abuse of discretion standard, this Court may not substitute its judgment for that of the district court; rather, [we] must determine whether the [district] court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." *Id.* (quoting *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995)). And even in the event of an error, we will not reverse if the error was harmless. Fed. R. Crim. P. 52(a). "[T]o find a district court's error harmless, we need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (cleaned up).

1.

Smith's first evidentiary argument relates to the authenticity of the Snapchat video. In his view, the Government failed to adequately authenticate it, meaning that the district court should have forbidden its admission. We disagree.

To establish that evidence is authentic, "a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *Vidacak*, 553 F.3d at 349 (quoting Fed. R. Evid. 901(a)). The ultimate factual determination of whether evidence is that which the proponent claims is reserved for the jury. *Id.* (citing

*United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992)). The district court's role is to act as "gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* Consistent with this "gatekeeping" role, the burden to authenticate under Rule 901 is not high; only a *prima facie* showing is required. *Id.*; *United States v. Banks*, 29 F.4th 168, 181 (4th Cir. 2022) (quoting *United States v. Recio*, 884 F.3d 230, 236 (4th Cir. 2018); *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)). The district court need only conclude that "'the jury *could* reasonably find that the evidence is authentic,' not that the jury necessarily *would* so find." *Banks*, 29 F.4th at 181–82 (quoting *Hassan*, 742 F.3d at 133) (emphasis in original).

In view of the minimal burden imposed by Rule 901(a), we have little trouble concluding that the district court did not abuse its discretion in finding that the Government sufficiently authenticated the Snapchat video. The authentication evidence adduced by the Government included testimony that a recording of the Snapchat video was received by police on February 22, 2021—the same day as the high-speed chase involving Smith and Piper. The Government also elicited testimony that the video depicted Smith brandishing what appeared to be a black handgun while riding in a vehicle with an individual that matched Piper's description. Based on this evidence, a jury "*could* reasonably find" that the video is what the Government claimed it to be—an authentic depiction of a Snapchat video recorded by Smith on February 22, 2021. *Banks*, 29 F.4th at 181–82 (quoting *Hassan*, 742 F.3d at 133) (emphasis in original); *see* Fed. R. Evid. 901(a).

9

Smith raises several arguments to the contrary, but none carry the day. For example, he devotes much of his briefing to arguing that the Government has failed to sufficiently authenticate the *date* that the Snapchat video was recorded. But in doing so, Smith improperly ignores the ample circumstantial evidence on this point. *See Vidacak*, 553 F.3d at 350–51 (noting that the *prima facie* showing required to authenticate evidence "may be accomplished largely by offering circumstantial evidence"). In that regard, the Government produced the following evidence: Smith was with Piper on February 22, 2021; the two men were involved in a car chase together on that date; the video depicts Smith and Piper brandishing a firearm similar in appearance to the Hi-Point firearm found by their abandoned vehicle[5]; and after he was arrested on February 22, 2021, Smith admitted that Piper had *some* firearm in the car. Taken together, this evidence is certainly sufficient to permit a jury to find that the video shown is an accurate depiction of a Snapchat recording captured on February 22, 2021. *See Banks,* 29 F.4th at 181; *see also* 31 Charles A. Wright, Arthur R. Miller & Victor J. Gold, *Federal Practice & Procedure* § 7104 (2d ed. 2024) ("The 'sufficient to support a finding' standard is not exacting. . . . The judge should permit the evidence to go to jury unless the showing on authenticity is so weak that no reasonable juror could consider the evidence to be what its proponent claims it to be.").[6]

---

[5] The content of the challenged evidence may be considered as part of the authentication inquiry. *See* Fed. R. Evid. 901(b)(4) (noting that the "appearance, contents, substance, internal patterns, or other distinctive characteristics" of a piece of evidence can establish its authenticity).

[6] The fact that Snapchats disappear shortly after viewing provides further support for this conclusion. *See Mahanoy Area Sch. Dist.*, 594 U.S. at 184–85. Accordingly, the fact that a recording of the Snapchat was sent to Major Carter on February 22, 2021, is circumstantial evidence that the Snapchat itself was taken on or near that day. *Cf. United*

Even assuming the district court initially admitted the video with inadequate authentication, subsequent testimony resolved any defect. Pineda's testimony after the video was admitted (but before it was shown a second time) would have cured any initial error since he testified regarding both the date *and* contents of the video. *See United States v. Luna*, 649 F.3d 91, 103 (1st Cir. 2011) ("If evidence is admitted prematurely because it is not yet authenticated, a court of appeals need not remand for a new trial if later testimony cures the error."); *United States v. Blackwell*, 694 F.2d 1325, 1331 (D.C. Cir. 1982) ("[E]ven if the photographs were not fully authenticated by the prosecution and their admission into evidence premature, any error was cured by [subsequent] testimony."). Such testimony resolves Smith's main authentication argument—that the Government failed to establish the date on which the original video was taken, and that the video's substantive content could have been altered before police received it. Pineda's testimony thus remedied any error that may have attended the initial admission of the video.

In sum, we conclude that the Government sufficiently authenticated the challenged Snapchat video. And even assuming it did not, any error was cured by Pineda's subsequent testimony regarding the timing and contents of the video.

---

*States v. Bowens*, 938 F.3d 790, 794 (6th Cir. 2019) (noting that the date on which content is uploaded to a social media platform "is at least a reference point" with respect to when it was created, and that a "juror could infer that a picture posted in, say, late October 2016, was in fact taken in late October 2016").

2.

Smith next invokes the best evidence rule to argue that the Snapchat video should not have been admitted at trial. Again, we disagree.

As a threshold matter, the parties disagree over the applicable standard of review for this issue. Smith maintains that because he raised it before the district court, the abuse of discretion standard applies. The Government, conversely, argues for plain error review. The Government's position is correct.

"[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (citation omitted, alteration in original). Put another way, "the party must raise the argument in a manner sufficient 'to alert the district court to the specific reason' the party seeks relief." *CoreTel Va., LLC v. Verizon Va., LLC*, 808 F.3d 978, 988 (4th Cir. 2015) (quoting *United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012)); *see* Fed. R. Crim. Proc. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.").

In the proceedings below, Smith filed a motion in limine pursuant to "Rules 401, 403, and 901 of the Federal Rules of Evidence," seeking to exclude "certain unauthenticated video evidence." J.A. 22. Therein, Smith argued that "without additional *foundation*, there is no way to determine whether the video is what the government claims it is – a video taken during the high-speed chase on February 22, 2021." J.A. 23 (emphasis

12

added). Also in that motion, Smith suggested that "[w]ithout testimony from the unidentified third party who purportedly received the video and turned it over to law enforcement . . . , there is no way to know whether . . . that third party altered the video before he or she turned it over to law enforcement." J.A. 25. Smith's video-related arguments at trial struck the same tenor, as he only explicitly objected to the *foundation* for the video evidence. *See* J.A. 89 ("We would objection on the foundation, your honor."); J.A. 277 ("The other two [motions] can be addressed at a later point as the evidence comes in. One of them is a motion in limine asking that the Snapchat video . . . be excluded from evidence. It relates to foundation.").

In short, Smith repeatedly assured the district court that his objections to the Snapchat video related to foundation and authenticity (i.e., Rule 901)—not the best evidence requirement (i.e., Rule 1002). He therefore failed to preserve his best evidence argument. Accordingly, we review the district court's resolution of this issue only for plain error.[7] *See CoreTel Va., LLC*, 808 F.3d at 988; *see United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010) ("[W]hen a party does not preserve an argument in the district court, we review only for plain error.").

To establish plain error, the appealing party "must show that an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights." *Lynn*, 592 F.3d at 577

---

[7] Smith relies heavily on *United States v. Johns*, 759 F. App'x 367 (6th Cir. 2018) to argue against plain error review, but his reliance is misplaced. *Johns* involved a situation where the district court, *in the first instance*, construed the government's argument as invoking the best evidence requirement. *See id.* at 369–70. Here, the district court did not construe Smith's arguments in such a way (and rightfully so, given his explicit foundation and authenticity-related arguments). We need not second guess this determination.

13

(citing *United States v. Massenburg*, 564 F.3d 337, 342–43 (4th Cir. 2009)). Applying this deferential standard, the district court committed no "clear or obvious" error when it admitted the challenged video into evidence. *Id.*

The "best evidence" rule provides that when a party seeks to prove the "content" of a "writing, recording, or photograph," it must typically do so with the original. Fed. R. Evid. 1002; *see United States v. Ivey*, 60 F.4th 99, 113 (4th Cir. 2023). While there are several exceptions to this requirement, one is particularly relevant here: Rule 1004. Rule 1004 provides that "an original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a).

Here, the challenged video appears to be a recording of a Snapchat video made by Smith during the high-speed chase on February 22, 2021. As previously noted, Snapchat videos disappear shortly after being sent or posted. It is possible, then, that the nature of Snapchat videos triggers Rule 1004(a)'s exception to the original document rule for recordings that are "lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). To be sure, there are instances where a finding of bad faith could preclude Rule 1004(a)'s application with respect to Snapchat videos. But here, the original Snapchat video has seemingly been lost as a function of the social media application's usual course of conduct, and there is no suggestion of bad faith on behalf of the Government. Rule 1004(a)'s potential applicability therefore establishes that any alleged error by the district

14

court in admitting the video was not sufficiently "clear or obvious" such as to justify reversal. *Lynn*, 592 F.3d at 577.[8] This finding dooms Smith's plain error challenge.

In summary, plain error review applies to Smith's best evidence challenge, and the district court did not plainly err by failing to sua sponte exclude the Snapchat video on best evidence grounds.

3.

With his final evidentiary argument, Smith contends that the Snapchat video was unfairly prejudicial and should have been excluded pursuant to Rule 403. This argument cannot prevail for two reasons.

First, Smith waived this argument by failing to sufficiently develop it. His unfair prejudice argument is two short paragraphs. In the first, he summarizes Rule 403's provisions. In the second, he asserts only that "[t]he authenticity and [best evidence rule] issues discussed herein reduce or negate the [video's] probative value and create a danger of unfair prejudice, confusing the issues, and misleading the jury." Opening Br. 67.[9] This argument is best characterized as a "passing shot" at the unfair prejudice issue. *Grayson O*

---

[8] Rule 1003, which pertains to the admissibility of duplicates, provides another potential avenue for admissibility of the challenged video. That said, because Smith did not explicitly raise a best evidence challenge at trial, the Government had no occasion to produce evidence regarding the process by which the video shown at trial was captured. And without that evidence, it is impossible to definitively determine the applicability of Rule 1003. *See* Fed. R. Evid. 1001 (defining a "duplicate" to be a "counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original").

[9] Smith also fails to develop this argument any further in his Reply Brief, noting only that he incorporates the arguments from his Opening Brief.

*Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (internal quotations omitted). And as this court has previously held, such a passing shot is insufficient to avoid a finding of waiver. *See id.* ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

Second, even if Smith had not waived this argument, it would be unsuccessful. As the excerpt from his briefing reveals, Smith's unfair prejudice argument rises and falls with his authenticity and best evidence arguments. But for the reasons outlined above, neither of those arguments have merit. Therefore, his unfair prejudice argument must fail too.

\* \* \*

In the end, Smith has failed to establish that the district court abused its discretion in admitting the challenged video. We therefore affirm the district court's decision to admit the Snapchat video over his objection.

B.

Smith next challenges the district court's denial of his motion for judgment of acquittal. In his view, there was insufficient evidence adduced at trial to support his conviction. A thorough review of the record below compels us to disagree.

"We review de novo the denial of a Rule 29 motion for judgment of acquittal." *United States v. Dinkins*, 691 F.3d 358, 387 (4th Cir. 2012) (citing *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011)). When reviewing the sufficiency of the evidence after a conviction, the evidence and all reasonable inferences drawn from the

16

evidence must be viewed in the light most favorable to the Government. *Id.* (citing *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002)). The jury verdict will be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Here, the jury convicted Smith of one count of possession of a firearm by a convicted felon and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. To establish the crime of being a felon in possession of a firearm, the Government must prove that (1) the defendant was previously convicted of a felony, (2) the defendant knew he had previously been convicted of a felony, (3) the defendant knowingly possessed the firearm, and (4) the possession was in or affecting commerce. *United States v. Robertson*, 68 F.4th 855, 862 (4th Cir. 2023) (citing 18 U.S.C. § 922(g)(1); *Rehaif v. United States*, 588 U.S. 225, 237 (2019)). For the third element, constructive possession is sufficient, meaning a person can be considered to have possessed the firearm if "he exercised, or had the power to exercise, dominion and control over the firearm." *Id.* (quoting *United States v. Wilson*, 484 F.3d 267, 282 (4th Cir. 2007)).

There was sufficient evidence to support Smith's conviction for being a felon in possession of a firearm. To begin, Smith stipulated that he was previously convicted of a felony and knew of his status as a convicted felon. These stipulations satisfy the first two elements of the offense. *See id.* Further, Smith does not contest the existence of the fourth element—that the firearm was in or affecting interstate commerce. The only element that Smith contests on appeal is whether the evidence was sufficient to establish that he possessed the Hi-Point 9mm handgun bearing serial number P1697108. It was.

The evidence adduced at trial—viewed in the light most favorable to the Government, *see Penniegraft*, 641 F.3d at 571—reveals that Piper and Smith were involved in a high-speed chase on February 22, 2021. During that chase, Smith recorded a Snapchat video wherein he and Piper took turns brandishing a black handgun, bragging about their flight, and making vague threats. When their vehicle eventually ran out of gas, they abandoned it in a ditch and fled on foot. Police arrived on scene shortly thereafter and recovered a Hi-Point 9mm firearm, which appeared to be very similar to the firearm that Piper and Smith had brandished in the Snapchat video. In addition, the Hi-Point firearm that officers recovered was missing a magazine, but the 9mm magazine that officers found after Piper evaded apprehension earlier that same month matched the Hi-Point firearm. This further connected the firearm to Piper (and thus to Smith). Finally, Smith admitted to the police that there was *a* firearm in the car (though he "thought" it was a .380), and he admitted to Pineda that he had waved a "9mm" firearm in a Snapchat video during the police chase.

Taken together, and in view of the "heavy burden" borne by Smith at this stage, *United States v. Dennis*, 19 F.4th 656, 665 (4th Cir. 2021) (internal quotations omitted), the foregoing evidence is certainly sufficient to sustain the jury's finding that Smith possessed the Hi-Point 9mm firearm bearing serial number P1697108 beyond a reasonable doubt, *see Jackson*, 443 U.S. at 319 (noting that a jury's verdict should be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original).

18

Smith's primary argument to the contrary focuses on whether he possessed the specific firearm charged in the indictment. He contends that the "unidentified firearm shaped object" in the Snapchat video is not the Hi-Point firearm that officers found on scene because the firearm depicted in the video lacks a shiny, silver plate on the underside of its barrel. Opening Br. 5, 13. By contrast, the Hi-Point firearm officers found *does* have such a plate. Smith thus asks the Court to "conduct[] its own independent assessment of the facts and adopt[] the version of events depicted in the [Snapchat video]," Opening Br. 25, rather than from Pineda's testimony—and the jury's apparent conclusion—regarding what the Snapchat video depicts. We decline to do so. Whether the gun in the Snapchat video is the Hi-Point 9mm firearm and whether Pineda's testimony is credible are quintessential jury questions, and it would be improper to disturb the jury's findings. *See Dinkins*, 691 F.3d at 387 ("[I]t is the jury's province to weigh the credibility of the witnesses, and to resolve any conflicts in the evidence." (citing *Alerre*, 403 F.3d at 693)). To the extent that the video is inconsistent with Pineda's testimony—a proposition that is not nearly as clear as Smith portrays it to be—it was the jury's role to resolve such contradiction. The jury did just that, and we will not now step in and disturb its conclusions.

## III.

For the foregoing reasons, the district court's judgment is affirmed.

*AFFIRMED.*

19